UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SIMON ZAIDMAN,<br><br>Petitioner,<br><br>vs.<br><br>MOLLY PENTON-ZAIDMAN,<br><br>Respondent. | 5:24-CV-05077-RAL<br><br>OPINION AND ORDER GRANTING<br>TEMPORARY RESTRAINING ORDER |

Petitioner Simon Zaidman (Simon) filed this Verified Petition under the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention) and its implementing legislation, the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001–9011, seeking return of his six-year-old son, M.Z., and his nine-year-old daughter, C.Z. Doc. 1. Zaidman alleges that Respondent Molly Penton-Zaidman (Molly), the children's mother, wrongfully removed their two children from their habitual residence in Mexico to Spearfish, South Dakota. Doc. 1. Zaidman seeks a temporary restraining order (TRO) prohibiting Molly from removing the children from this Court's jurisdiction pending a hearing on the merits of his petition.

I.      **Facts**[1]

Simon, a citizen of Austria and Venezuela, married Molly, a United States citizen, in California in 2010. Doc. 1 ¶ 9. Molly gave birth to the couple's first child, C.Z., in Florida in

---

[1]This Court draws the facts from Simon's Verified Petition and is not making findings of fact in issuing this opinion and order.

2014. Id. ¶ 12. The family moved to Switzerland in January 2015, id. ¶ 10, where Molly gave birth to the couple's second child, M.Z., in 2018, id. ¶ 12. The family relocated to Mexico in October 2021. Id. ¶ 11. Simon alleges that both children have lived in Mexico since 2021 and that Mexico is the children's habitual residence. Id. ¶ 12. He claims that in early September 2023, while he was out of town, Molly took the children to the United States without his consent. Id. ¶ 17. Since then, Simon alleges, he has only seen his children in person once when the parties met in Panama. Id. ¶¶ 19–20. Molly obtained a default judgment and decree of divorce in South Dakota state court in July 2024. Id. ¶ 40.

## II.    Legal Standard

Simon's Verified Petition requests a TRO prohibiting removal of the children from this Court's jurisdiction pending a hearing and decision on the merits. District courts within the Eighth Circuit have treated requests for a TRO in a verified Hague Convention petition as a motion for a TRO under Rule 65(b) of the Federal Rules of Civil Procedure. Morgan v. Morgan, 289 F. Supp. 2d 1067, 1068–69 (N.D. Iowa 2003); Rodriguez v. Molina, 608 F. Supp. 3d 791, 795–96 (S.D. Iowa 2022). Rule 65(b)(1) and (2) provide as follows:

> **(b) Temporary Restraining Order.**
> **(1) *Issuing Without Notice.*** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> > **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> > **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
>
> **(2) *Contents; Expiration.*** Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a

like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

"A district court considering injunctive relief evaluates [a] the movant's likelihood of success on the merits, [b] the threat of irreparable harm to the movant, [c] the balance of the equities between the parties, and [d] whether an injunction is in the public interest." Powell v. Ryan, 855 F.3d 899, 902 (8th Cir. 2017) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue. However, in deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." Turtle Island Foods, SPC v. Thompson, 992 F.3d 694, 699 (8th Cir. 2021) (cleaned up and citations omitted).

The focus in considering a temporary restraining order is whether the moving party "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). This Court and other district courts within the Eighth Circuit routinely apply the Dataphase factors when deciding whether to issue a TRO. Dakotans for Health v. Anderson, 675 F. Supp. 3d 919, 932 (D.S.D. 2023); Morgan, 289 F. Supp. 2d at 1069 (applying the Dataphase factors to a request for TRO in a Hauge Convention case).

## III.   Analysis

### A.   Simon's likelihood of success on the merits

The Hague Convention, to which the United States and Mexico are contracting states, "generally requires courts in the United States to order children returned to their countries of habitual residence, if the courts find that the children have been wrongfully removed to or retained in the United States." Chafin v. Chafin, 568 U.S. 165, 168 (2013). "The Hague Convention is not

3

designed to resolve underlying custody disputes, but rather to ensure that such disputes are adjudicated in the appropriate jurisdiction." <u>Acosta v. Acosta</u>, 725 F.3d 868, 875 (8th Cir. 2013) (cleaned up and citations omitted).

ICARA allows a parent seeking return of a child to file a petition in federal court. 22 U.S.C. § 9003(a), (b). District courts having jurisdiction over these petitions may take measures under Federal or state law to "protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." <u>Id.</u> § 9004(a).

A parent seeking return under ICARA has the burden of showing by a preponderance of the evidence that the child has been "wrongfully removed or retained" under the Hague Convention. <u>Id.</u> § 9003(e)(1)(A). The removal or retention of a child is wrongful under the Hague Convention where:

> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention art. 3.

Simon must show three things to make out a prima facie case of return for his children: (1) that Mexico was the habitual residence of C.Z. and M.Z. immediately before their removal to the United States in September 2023; (2) that the children's removal violated his custody rights under Mexican law; and (3) that he was exercising his parental rights before the children were removed. <u>Tsuruta v. Tsuruta</u>, 76 F.4th 1107, 1110 (8th Cir. 2023).

A child's habitual residence is "[t]he place where a child is at home, at the time of removal or retention." <u>Monasky v. Taglieri</u>, 589 U.S. 68, 77 (2020). It "depends on the totality of the circumstances specific to the case." <u>Id.</u> at 71. Simon has shown a fair probability, at least at this

early stage, that the children's habitual residence is Mexico. He alleges that the children lived in Mexico for nearly two years, attended the American School Foundation with their cousins, learned to speak fluent Spanish, and participated in after-school activities. Doc. 1 ¶¶ 11–14. The children had an active social life, Simon claims, along with a "strong support system and community in Mexico." Id. ¶ 14.

Simon asserts that he has custody rights over the children under the Mexican Federal Civil Code. The Hague Convention defines "rights of custody" as including "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention art. 5(a). Article 414 of the Mexican Federal Civil Code, translated into English,[2] provides that "parental authority," or, *patria potestas*, "over children shall be exercised by the parents." Mexican Federal Civil Code, art. 414. Article 416 explains that if parents separate, "both shall continue with the fulfillment of their duties" and, if there is a disagreement on custody, "the judge of the Family Court shall resolve the issue after hearing the Public Prosecutor, without prejudice of what is written in articles 94 of the Code of Civil Procedure for the Federal District." Mexican Federal Civil Code, art. 416. Simon argues that Molly violated Article 421, which provides that "[a]s long as a child is subject to parental authority, he may not remove himself from the home of those who exercise it without their permission, unless he obtains permission to do so from an appropriate authority." Mexican Federal Civil Code, art. 421.

A "significant number of courts have held that *patria potestas* rights are 'rights of custody' under the Convention." Garcia v. Posada, 24-CV-0360-X, 2024 WL 1615029, at *5 n.84 (N.D. Tex. Apr. 2, 2024) (collecting cases); Rodriguez v. Noriega, 23-cv-3911, 2024 WL 1988236, at

---

[2]This Court is relying at this time on the translation by Professor Jorge A. Vargas of the University of San Diego School of Law in a 2012 bilingual edition of the Mexican Civil Code Annotated.

*4 (D. Minn. May 6, 2024) (finding that father had custody rights under Sinaloa Code very similar to the law Simon cites here).  Simon has established a fair probability that he has some custody rights under the laws of Mexico and that Molly may have violated those rights by removing the children without his consent or an appropriate court order.[3]

Simon has also shown a fair chance that he was exercising these custody rights before Molly removed the children; he claims that he is the children's father and that he has exercised custody rights over the children since they were born.  Doc. 1 ¶ 35.  At this early stage, Simon has established a fair probability of success on the merits.

### B.  Threat of irreparable harm to Simon

Simon has shown that he would face irreparable harm if this Court did not prohibit removal of the children from South Dakota.  Simon has not consented to removal of the children to the United States, Molly has refused to return the children to Mexico despite Simon's requests, and Simon has only seen the children once since September 2023.  Doc. 1 ¶¶ 17–19.  According to Simon, his access to the children is limited to video calls.  Id. ¶ 20.  Given that Molly has allegedly wrongfully removed the children from Mexico and has refused to return them, there is a risk that she could remove them from South Dakota before this Court can rule on Simon's petition.  This would frustrate the purpose of the Hague Convention and ICARA, and is enough—along with the allegedly unlawful denial of Simon's right to raise his children—to establish a threat of irreparable harm.  See Schaeffer v. Jackson-Schaeffer, 17-cv-147, 2017 WL 11458052, at *3 (E.D. Tenn. Nov. 8, 2017) (finding threat of irreparable harm where there was a possibility that a parent would flee

---

[3]This is necessarily a very preliminary conclusion.  This Court will want to conduct an evidentiary hearing and hear from both sides fully before making any findings of fact, including hearing why there has been a more-than-one-year delay between when Molly removed the children from Mexico and when Simon filed this action.

the jurisdiction and conceal the child before a court hearing); Cocom v. Timofeev, 18-cv-002247, 2018 WL 3958129, at *4 (D.S.C. Aug. 17, 2018) (finding a threat of irreparable harm where the petitioner was being unlawfully denied her interest in raising her child and there was a risk that the father would leave the jurisdiction).

### C. Balance of equities between the parties

Simon has shown a threat of irreparable harm as just discussed and there appears to be minimal harm to Molly from granting Simon's request for a TRO. This order is temporary, and not at all a merits determination. Instead, this order merely maintains the status quo by prohibiting Molly from removing the children from this jurisdiction until a hearing on the merits can occur. The balance of equities favors Simon. See McIntyre v. Smith, 21-cv-2182, 2021 WL 5167280, at *3 (D. Minn. Oct. 7, 2021) (finding that requiring a parent to remain in the jurisdiction pending resolution of a petition imposed a minimal burden and that the balance of harms favored granting a TRO).

### D. Public Interest

The public interest favors granting the TRO as doing so furthers "resolving the problem of international abduction" and "ensuring custody disputes are resolved by the relevant country." Rodriguez, 608 F. Supp. 3d at 802 (cleaned up and citation omitted).

### E. Bond

Under Rule 65(c), a TRO should issue "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Because nothing suggests that prohibiting Molly from leaving South Dakota with the children would cause her financial harm, this Court waives the bond requirement. See McIntyre, 2021 WL 5167280, at *4 (waiving the bond requirement where the

court had no reason to think that precluding respondent from leaving jurisdiction would cause financial damage).

## IV.    Conclusion

For the reasons explained, it is

ORDERED that a TRO enters under Fed. R. Civ. P. 65(b) prohibiting Respondent Molly Penton-Zaidman, and any person acting in concert with her, from removing the parties' children, M.Z and C.Z, from South Dakota.  It is further

ORDERED that Respondent Molly Penton-Zaidman deposit the children's passports with the Clerk of Court's Office in Rapid City, South Dakota, by October 23, 2024.  It is further

ORDERED that this Court anticipates renewing the TRO once and then conducting a preliminary injunction evidentiary hearing at the Federal Courthouse in Rapid City, South Dakota, on November 6, 2024, at 10:00 a.m. Mountain Time, reserving two days for the evidence.  The parties should appear personally with counsel for the preliminary injunction evidentiary hearing. It is further

ORDERED that Petitioner Simon Zaidman serve the Verified Petition and this Opinion and Order on Molly Penton-Zaidman.  Simon should also serve the Verified Petition and this Opinion and Order on Attorney Eric Schlimgen, who represented Molly in her state divorce proceedings, at 611 Dahl Rd., Suite 1, Spearfish, SD 57783. It is further

ORDERED that the Clerk of Court email this opinion and order and pleadings in this case to attorney Eric Schlimgen.  It is finally

ORDERED that the bond requirement is waived.

DATED at _8_ : _20_ <sup>a.m.</sup> this _10th_ day of October, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

9