UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN      DIVISION

SIMON ZAIDMAN ,                )
                               )
                               )
                   Plaintiff   )
                               )
vs.                            )
                               )
                               )
MOLLY PENTON-ZAIDMAN ,         )
                               )
                               )
                   Defendant.  )

CIV **24-5077** __

**MOTION FOR ADMISSION
PRO HAC VICE**

### Statement of Movant

I, KIMBERLY R. KINNEY , an active member of the Bar of the U.S. District Court

for the District of South Dakota, request that this Court admit pro hac vice Richard Min

who will be counsel for the    X plaintiff(s)    ☐ defendant(s) SIMON ZAIDMAN    in the

case listed above. I have confirmed that Richard Min    is a member in good

standing of the U.S. District Court for the District of New York___Eastern    , where

Richard Min's    's principal practice is located. I am aware of D.S.D. Civ. LR. 83.2 (E)

regarding the appearance of attorneys pro hac vice.

10/10/24

Kimberly Kinney (Oct 10, 2024 14:24 MDT)
Signature

### Statement of Proposed Admittee

I, Richard Min    , am currently a member in good standing of the U.S.

District Court for the District of New York - Eastern/Southern . I am also a member in good standing

of the highest court of the state of ___New York___, where my principal practice is located, but am not admitted to the South Dakota Bar. I am aware of D.S.D. Civ. LR 83.2 (E) regarding the appearance of attorneys pro hac vice and understand that local counsel must sign and file all documents, and must continue in the case unless another attorney admitted to practice in this court is substituted. I understand that I will receive notice electronically and that it is my responsibility to keep my electronic mail address(es) current.

First/Middle/Last Name:     Richard Min

Primary E-mail Address:     rmin@gkmrlaw.com

Other E-mail Address to be notified:

Telephone Number:     (212) 681-6400

Fax Number:     (212) 681-6999

Firm    Name:     Green Kaminer Min & Rockmore LLP

Firm Address:     420 Lexington Avenue, Suite 2821

New York, NY 10170

Bar Admission Number:     4580858

D.S.D. Civ. LR 83.2 (E). requires disclosure of any prior or pending disciplinary actions from those attorneys seeking admission pro hac vice. Please list any and all such disciplinary actions.

see attached as Exhibit A

·   I will review and abide by the Local Rules of Practice for the District of South Dakota, General Orders, Administrative Procedures, and all technical and procedural requirements. These documents and current system requirements can be found on the Court's web site located at http://www.sdd.uscourts.gov

·   I understand that I will receive notice electronically of all non-sealed documents and that it is my responsibility to keep my electronic mail address(es) current.

·   This system is for the U.S. District Court for the District of South Dakota and will be used to receive electronic notification of non-sealed documents that are filed with the District of South Dakota. Each e-mail address listed will be allowed one free access to the document filed for 15 days from the time of notification.

·   For additional access the user will need to have a PACER Service Account. This account can be established by contacting the PACER Service Center at http://pacer.psc.uscourts.gov or 1-800-676-6856.

| October 10, 2024 | Richard Min | |
|---|---|---|
| Date | Type/Print Name | Signature |

# motion for admissions phv version_04212021_fillable

Final Audit Report                                          2024-10-10

| | |
|---|---|
| Created: | 2024-10-10 |
| By: | Kristen Ellingsworth (kristen@kinney-law.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA78oAT54MADzww6MwJcg8wdyKJXfaXuXO |

## "motion for admissions phv version_04212021_fillable" History

🗎 Document created by Kristen Ellingsworth (kristen@kinney-law.com)
   2024-10-10 - 8:22:09 PM GMT

🖃 Document emailed to Kim de Hueck (kim@kinney-law.com) for signature
   2024-10-10 - 8:23:21 PM GMT

🗎 Email viewed by Kim de Hueck (kim@kinney-law.com)
   2024-10-10 - 9:24:03 PM GMT

✍ Document e-signed by Kim de Hueck (kim@kinney-law.com)
   Signature Date: 2024-10-10 - 9:24:16 PM GMT - Time Source: server

✔ Agreement completed.
   2024-10-10 - 9:24:16 PM GMT

**⧎ Adobe Acrobat Sign**

## <u>Exhibit A – Answering Question Regarding Sanctions</u>

On November 30, 2021, a Petition was filed in the U.S. District Court for the Eastern District of California pursuant to the Hague Convention on the Civil Aspects of International Child Abduction for the return of two children to Germany. The case number is 21-cv-01706. I was admitted *pro hac vice* on behalf of Petitioner, who was a Lt. Colonel in the U.S. Airforce. Prior to the filing of the Petition, he was stationed at Rammstein Air Force Base in Germany, where he lived with Respondent and their two children.

On May 11, 2022, Respondent became aware that Petitioner may be transferred from Germany to California. Petitioner's counsel was unaware that he may be transferred to Beale until on or about May 12, 2022. On May 17, 2022, Respondent then filed a motion to continue the upcoming evidentiary hearing on the merits of the Hague Petition scheduled for May 25, 2022, in order to obtain discovery on Mr. Krause's military transfer to California. On Wednesday, May 18, 2022, Petitioner provided a copy of his orders to his counsel, which were turned over to Respondent the same day. Later that day there was a court appearance, during which the Court heard oral argument on Respondent's motion to continue. Petitioner Krause objected to the continuance through counsel, and the Court denied Respondent's continuance motion.

Consistent with his opposition to the continuance, Petitioner's preparation for the upcoming trial continued in earnest after May 18, 2022. Counsel continued preparing witnesses and exhibits until May 20, 2022 (a Friday), as reflected in attorney invoices submitted to Petitioner (which Petitioner paid). After discussions with Petitioner on Saturday, May 21, 2022, on Sunday, May 22, 2022, Petitioner's counsel contacted Respondent's counsel at approximately 8:59 am ET advising that Petitioner would be seeking to withdraw his Hague action. On Monday, May 23, 2022, Petitioner filed a motion to dismiss his Hague Petition. On that same day, Monday, Petitioner's counsel contacted the witnesses they were planning to call for the upcoming trial to alert them they were no longer needed.

Respondent moved for sanctions on the theory that Petitioner prosecuted the Hague case knowing that he was going to move to California. Petitioner opposed Respondent's request for sanctions.

As to the specific issue of opposing the motion to continue on May 18, Petitioner explained that when faced with the continuance request on short notice, he faced a difficult choice between two legitimate options: (i) proceeding with the Petition and preserving the best possible outcome of bringing his children back to Germany despite uncertainty in the timeline of obtaining a favorable ruling and addressing any appeals, or (ii) abandoning the Petition and moving to California to be closer to his children sooner but under less favorable circumstances. He initially decided to proceed with the Petition to avoid closing the door on the option of having his children returned to Germany, but ultimately decided to dismiss the Petition five days later on May 23, 2023 and proceed with his transfer and relocation to California because that option presented the certainty of being closer to his children sooner.

On March 16, 2023, Magistrate Judge Stanley Boone issued an order and recommendation granting Respondent's motion for sanctions. The Magistrate Judge found that Petitioner and his counsel should be liable for sanctions because on May 18, 2023, they did not consent to a continuance (on one days' notice) before ultimately moving to dismiss the pending Petition five days later on May 23, 2023.

No evidence supports the finding that Petitioner and Petitioner's counsel acted in bad faith. Further, objective evidence establishes that there was no bad faith or intention to harass Respondent. Petitioner's counsel prosecuted a live case until instructed to dismiss the Petition by their client within the context of emotionally fraught situation where Petitioner was justifiably conflicted about the options most likely to result in him reuniting with his children in a timely manner in the country he preferred. Even if that finding were accepted, which it should not be because it was clearly erroneous based on the record, it does not satisfy the high "bad faith" standard. The Magistrate Judge's conclusion was therefore contrary to law.

The Order made only two factual findings specific to Petitioner's counsel. First, the Court explained that "[t]he Court accepts that 'Petitioner's counsel did not receive Petitioner's reassignment orders until May 18, 2022 and were not aware that it was a consideration until on or around May 13, 2022.'" Second, the Court found that was "no good faith reason why the Petitioner and his counsel's calculations or reasoning should have changed" between May 18 and May 23.

Those findings do not support a conclusion of bad faith levied against counsel, because the logic of Magistrate Judge Boone's bad-faith finding was specific to Petitioner himself. Specifically, the Magistrate reasoned that *Petitioner* did not actually believe he could still stay in Germany after receiving the transfer order, and *Petitioner* knew "that the hearing would never proceed" when he opposed the continuance on May 18. Even if that were accurate (and Petitioner has explained it is not), it does not follow that Petitioner's counsel believed and knew the same.

Petitioner's counsel had an ethical duty to implement the strategy Petitioner wanted absent knowledge that the strategy was unethical or illegal. *e.g.*, N.Y. Rule of Prof'l Conduct 1.2. Petitioner's counsel has stated that they had had no intention to harass Respondent, nor did counsel carry out any strategy that counsel understood to be for the purpose of harassing Respondent. Further, counsel had a good-faith belief that this matter was not moot (which Magistrate Judge Boone ultimately agreed with), and that relief was available to Petitioner via the Hague Petition, including at the time he sought dismissal of the Petition on May 23, 2022.

No evidence or testimony in the record contradicts Petitioner's counsel's statements, nor independently supports the conclusion that Petitioner's counsel believed Petitioner had no realistic option to stay in Germany after May 18 or intended to harass Respondent. Moreover, the billing records and communications with witnesses confirm that counsel continued to work on this matter in good faith after May 18, which is inconsistent with any finding that counsel never intended to proceed with the Hague hearing and therefore opposed the continuance only to harass Respondent.

A motion for reconsideration to the District Court objecting to the sanctions determination was filed on March 30, 2023.  It has been fully briefed and parties are still awaiting a decision by the District Judge.

A copy of the sanctions determination and the objections thereof are attached hereto.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KRAUSE, | Case No. 1: 21-cv-01706-JLT-SAB |
| Petitioner, | ORDER DENYING PETITIONER'S MOTION FOR SANCTIONS, GRANTING IN PART AND DENYING IN PART RESPONDENT'S MOTION FOR SANCTIONS, WITHDRAWING RESPONDENT'S MARCH 15, 2022 REQUEST FOR JUDICIAL NOTICE, AND GRANTING RESPONDENT'S NOVEMBER 2, 2022 REQUEST FOR JUDICIAL NOTICE |
| v. | |
| TARA KRAUSE, | |
| Respondent. | |
| | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PETITIONER'S MOTION TO DISMISS IN LIGHT OF ORDER ON SANCTIONS AND DISMISSING ACTION WITH RETENTION OF ANCILLARY JURISDICTION TO ADJUDICATE FURTHER ISSUES REGARDING SANCTIONS ORDER |
| | (ECF Nos. 34, 70, 71, 78, 79, 104, 105) |
| | **OBJECTIONS DUE WITHIN 14 DAYS** |

## I.

## INTRODUCTION

This action proceeds on Petitioner Lieutenant Colonel Michael Krause's verified petition for the return of children to Petitioner (the "Petition"), against Respondent Tara Krause, brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction and the

1    International Child Abduction Remedies Act (the "Hague Convention" or "Convention").  The

2    matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and

3    Local Rule 302.  (ECF No. 17.)  Currently before the Court are the parties' respective motions

4    for sanctions, as well as a pending motion to dismiss and requests for judicial notice.  (ECF Nos.

5    34, 70, 78, 79, 104.)  For the reasons explained herein, the Court grants Respondent's request for

6    judicial notice filed November 2, 2022 (ECF No. 104), denies Petitioner's motion for sanctions

7    (ECF No. 78), grants Respondent's motion for sanctions as to those fees incurred after the May

8    18, 2022 hearing (ECF No. 79), and withdraws the Respondent's request for judicial notice filed

9    March 15, 2022, as moot (ECF No. 34).

10        In light of this order adjudicating the cross-motions for sanctions, the Court further issues

11   findings and recommendations recommending granting Petitioner's motion to dismiss pursuant

12   to Federal Rule of Civil Procedure 41(a)(2), and dismissing this action with a retention of

13   ancillary jurisdiction to adjudicate any outstanding issues pertaining to the award of attorneys'

14   fees and costs.

15                                              **II.**

16                                   **RELEVANT BACKGROUND**

17        Petitioner instituted this Hague Convention action on November 30, 2021.  (ECF No. 1.)

18   On January 21, 2022, the Court entered a stipulated scheduling order that set discovery and

19   pretrial briefing deadlines.  (ECF No. 23.)  On March 21, 2022, after the filing of pretrial briefs,

20   the Court set a hearing for March 30, 2022, to discuss the setting of evidentiary and related

21   hearings.  (ECF No. 36.)  On March 30, 2022, the Court set an evidentiary hearing on the merits

22   of the Hauge Convention action to be held on May 25, 2022 (the "Convention Evidentiary

23   Hearing").  (ECF No. 37.)

24        On April 29, 2022, the Court denied Petitioner's motion to appear by video at the

25   Convention Evidentiary Hearing.  (ECF No. 43.)  On May 11, 2022, Petitioner filed a motion to

26   exclude Respondent's proposed exhibits that referenced settlement negotiations, pursuant to

27   Federal Rule of Evidence 408 ("FRE 408").  (ECF No. 45.)  On May 16, 2022, Respondent filed

28   an opposition to the motion *in limine*.  (ECF No. 48.)  On May 17, 2022, Respondent filed a

1    motion to continue the Convention Evidentiary Hearing.  (ECF No. 50.)  On May 18, 2022, the
2    Court heard oral argument on the motion *in limine* and the motion to continue the Convention
3    Evidentiary Hearing.  (ECF No. 54.)

4         On May 19, 2022, the Court granted Petitioner's motion in limine without prejudice to a
5    renewed proffer by Respondent to introduce such exhibits for another purpose under FRE 408.
6    (ECF No. 66.)   The same date, the Court also denied Respondent's motion to continue the
7    Convention Evidentiary Hearing.  (ECF No. 68.)

8         On May 23, 2022, Petitioner filed a motion to dismiss this action.  (ECF No. 70.)  On
9    May 24, 2022, Respondent filed a response to the motion to dismiss, indicating any dismissal
10   must be conditioned on an award of attorneys' fees to Respondent.  (ECF No. 71.)

11        On May 24, 2022, the Court converted the Convention Evidentiary Hearing scheduled for
12   May 25, 2022, into a status hearing to discuss further briefing on pending and forthcoming
13   motions.  (ECF No. 72.)  The Court held a status hearing on May 25, 2022, and issued an order
14   setting a briefing and hearing schedule on the forthcoming sanctions motions.  (ECF Nos. 73,
15   74.)

16        On June 1, 2022, Petitioner filed a motion for sanctions.  (Pet.'s Mot. Sanctions ("Pet.
17   Mot."), ECF No. 78.)  On the same date, Respondent filed a motion for sanctions.  (Resp.'s Mot.
18   Sanctions ("Resp. Mot."), ECF No. 79.)  On June 14, 2022, Respondent filed an opposition to
19   Petitioner's motion.  (Resp.'s Opp'n Pet. Mot. ("Resp. Opp'n"), ECF No. 80.)  On June 15,
20   2022, Petitioner filed an opposition to Respondent's motion.  (Pet.'s Opp'n Resp. Mot. ("Pet.
21   Opp'n"), ECF No. 81.)  On June 22, 2022, Petitioner filed a reply to the opposition.  (Pet.'s
22   Reply Resp. Opp'n ("Pet. Reply"), ECF No. 83.)  On June 22, 2022, Respondent filed a reply to
23   the opposition.  (Resp.'s Reply Pet. Opp'n ("Resp. Reply"), ECF No. 84.)

24        On July 6, 2022, the Court held a hearing on the motions, and proceeded to set a pre-
25   evidentiary conference for September 2, 2022, and set an evidentiary hearing to occur on
26   September 30, 2022 (the "Sanctions Evidentiary Hearing").  (ECF No. 85.)  On September 2,
27   2022, Respondent filed a motion for a subpoena.  (ECF No. 86.)  On September 2, 2022, the
28   Court held the pre-evidentiary hearing, at which, the Court set a hearing on the motion for

1    subpoena on September 21, 2022.  (ECF No. 87.)  On September 2, 2022, the Court also issued

2    an order following pre-evidentiary hearing that set a final briefing and Sanctions Evidentiary

3    Hearing schedule.  (ECF No. 88.)

4            On September 19, 2022, the Court issued an order granting the motion for subpoena and

5    vacating the September 21, 2022 hearing.  (ECF No. 90.)  On September 22, 2022, Respondent

6    filed a motion to continue the Sanctions Evidentiary Hearing.  (ECF No. 93.)  After ordering an

7    opposition, on September 26, 2022, the Court granted the motion to continue the Sanctions

8    Evidentiary Hearing, and converted the Sanctions Evidentiary Hearing into a status hearing re

9    scheduling .  (ECF Nos. 94, 95, 96.)  On September 30, 2022, the Court held a status conference,

10   at which, the Court set the Sanctions Evidentiary Hearing to be held on November 3, 2022.

11   (ECF No. 97.)

12           On November 3, 2022, the Court held the Sanctions Evidentiary Hearing.  (ECF No.

13   105.)  Counsel Savannah Wadsworth and Richard Min appeared on behalf of Petitioner.  Counsel

14   Drexwell Jones appeared on behalf of Respondent.  At the hearing, the Court heard testimony

15   from witnesses Savannah Wasdsworth, Lieutenant Colonel Mikita Brown ("Lt. Col. Brown"),

16   the Petitioner Lieutenant Colonel Michael Krause, and Respondent Tara Krause.

17                                              **III.**

18                                     **LEGAL STANDARDS**

19           The Federal Rules of Civil Procedure provides that the underlying purpose of the rules is to

20   "secure the just, speedy and inexpensive determination" of an action.  Fed. R. Civ. P. 1.  To

21   effectuate this purpose, the rules provide for sanctions against parties that fail to comply with court

22   orders or that unnecessarily multiply the proceedings.  As relevant to the instant matter, Rule 11

23   provides for sanctions against an attorney as follows:

24           **(b) Representations to the Court.** By presenting to the court a
             pleading, written motion, or other paper--whether by signing,
25           filing, submitting, or later advocating it--an attorney or
             unrepresented party certifies that to the best of the person's
26           knowledge, information, and belief, formed after an inquiry
             reasonable under the circumstances:
27           **(1)** it is not being presented for any improper purpose, such as to
             harass, cause unnecessary delay, or needlessly increase the cost of
28           litigation;

                                                4

**(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11.

Further, 28 U.S.C. § 1927 provides that: "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The Court also possesses inherent authority to impose sanctions to manage its own affairs so as to achieve the orderly and expeditious disposition of cases. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). The Court's inherent power is that which is necessary to the exercise of all others, including to protect the due and orderly administration of justice and maintain the authority and dignity of the Court. Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764 (1980). In order to coerce a party to comply with the Court's orders, the Court may issue sanctions for every day that party fails to respond to the Court's orders to show cause. See Lasar v. Ford Motor Co., 399 F.3d 1101, 1110 (9th Cir. 2005) (discussing court's authority to impose civil sanctions "intended to be remedial by coercing the defendant to do what he had refused to do."). The Local Rules of the Eastern District of California provide that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court." E.D. Cal. L.R. 110.

Local Rule 180(e) provides: "Every member of the Bar of this Court, and any attorney permitted to practice in this Court under (b), shall become familiar with and comply with the standards of professional conduct required of members of the State Bar of California and

contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and court decisions applicable thereto, which are hereby adopted as standards of professional conduct in this Court."  L.R. 180(e).  Rule 8.4(c) of the California Rules of Professional Conduct provides that it is professional misconduct to "engage in conduct involving dishonesty, fraud,* deceit, or reckless or intentional misrepresentation."

Federal Rule of Evidence 408 provides that:

> **(a) Prohibited Uses.** Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > **(1)** furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > **(2)** conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> **(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

"Courts have the ability to address the full range of litigation abuses through their inherent powers."  F.J. Hanshaw Enterprises, Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1136 (9th Cir. 2001).  "While it is preferable that courts utilize the range of federal rules and statutes dealing with misconduct and abuse of the judicial system, courts may rely upon their inherent powers to sanction bad faith conduct even where such statutes and rules are in place."  Id. at 1136–37.

## IV.

## DISCUSSION

Petitioner moves for sanctions pursuant to the Court's inherent power to levy sanctions and Local Rule 110, for Respondent's violation of Local Rule 180 and Rule 8.4 of the Rules of

1    Professional Conduct of the State Bar of California, and Respondent's bad faith conduct in filing

2    on the public electronic filing system, exhibits containing documents and communications made

3    during the course of settlement negotiations.

4          Respondent moves for sanctions in the form of attorneys' fees, arguing Petitioner

5    improperly maintained this action and proceeded forward into the scheduled Convention

6    Evidentiary Hearing, despite Petitioner knowing he was moving back to California for an Air

7    Force assignment, such that when a decision would eventually come in this case, the remedy

8    under the Convention of return to the child's country of habitual residence would be moot or no

9    longer viable.

10         **A.      Requests for Judicial Notice**

11         Respondent filed a request for judicial notice on March 15, 2022.  (ECF No. 34.)  In light

12   of the objections submitted thereto (ECF No. 35), as well as other evidentiary issues, the Court

13   then set the Convention Evidentiary Hearing for May 25, 2022.  (ECF Nos. 36, 37.)  Because the

14   Convention Evidentiary Hearing was never held, the Court shall order the request for judicial

15   notice be withdrawn as moot.

16         On November 2, 2022, Respondent filed a request for judicial notice in advance of the

17   Sanctions Evidentiary Hearing.  (ECF No. 104.)  Respondent requests the Court take judicial

18   notice of (1) Air Force Instruction 36-2110 (Ex. A, ECF No. 104 at 3-520); and (2) an Air Force

19   Office   Assignment   Schedule,   available   at   https://www.afpc.af.mil/News/Article-

20   Display/Article/1456165/two-cycle-officer-assignment-system-means-more-time-for-airmen-

21   families-to-make/ (last accessed March 15, 2023) (Ex. B, ECF No. 104 at 521-524).

22         Under the Federal Rules of Evidence, a court may take judicial notice of a fact that is

23   "not subject to reasonable dispute in that it is either (1) generally known within the territorial

24   jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

25   sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Court

26   shall grant the request for judicial notice.

27   / / /

28   / / /

**B.      Detailed Background Relating Prior to Convention Evidentiary Hearing**

Because the Court's viewpoint through a certain period of procedural history is highly relevant to the Court's findings as to the instant motions, and particularly its ultimate determination that issues sanctions as to a somewhat narrow period of time, the Court will now describe or excerpt portions of prior orders to elucidate why it made certain decisions at specific times, and what arguments were proffered by the parties at specific times as relevant to the issue of the opposition to and denial of the continuation of the evidentiary hearing, which in the Court's view, unnecessarily multiplied proceedings.

On May 17, 2022, the day before the hearing on the Petitioner's motion *in limine* to exclude Respondent's proposed exhibits relating to settlement discussions scheduled for May 18, 2022, Respondent filed a motion to continue the Convention Evidentiary Hearing scheduled for May 25, 2022.  (ECF No. 50.)  In her motion, Respondent argued the Convention Evidentiary Hearing should be continued, suggesting Petitioner was maintaining the Hague Convention proceeding in order to negotiate the division of marital assets in a divorce proceeding in California, which would be manifestly unjust, and proffered new evidence had raised substantial doubt whether the action was being maintained on proper grounds for a proper purpose.  (Id.)  The Court summarized the Respondent's arguments presented as follows:

> Respondent argues the hearing will be meaningless because, even if Petitioner were to prevail, the remedy of a return to Germany for the determination of custody would be impossible, because not only will Petitioner not be in Germany, but he would lack standing in German Courts.   Additionally, Respondent contends Petitioner has never opened a custody case in Germany as neither he nor Germany have a sincere interest in resolving the custody disputes in that forum.  (Mot. 2.)  Respondent also notes that she has contended this proceeding is a sham since inception, given the Petitioner initially filed for divorce and custody proceedings in the United States, and only claimed to be a habitual resident of Germany after learning about the Hague Convention. Respondent submits to the Court that by continuing to pursue this petition after making arrangements to return to the United States "goes beyond a meritless initial pleading – it is frivolous, vexatious, and oppressive." (Mot. 2.)
>
> Respondent submits that continuance of the evidentiary hearing is proper because: (1) the Court's continuing jurisdiction under Article III is doubtful; (2) the only remedy under the Hague Convention is moot; (3) even if briefly returned to Germany to

> collect belongings, the goal of the Convention is to allow the laws of the purported country of habitual residence to be used to determine custody or preserve the status quo, and allowing Petitioner to perpetuate a charade by a brief return to Germany with the children just so he can say he won would be emotionally detrimental to their welfare. Respondent also asserts the continuance is proper in order to allow for Respondent to conduct discovery, as effective direct examination of Petitioner will require obtaining competent evidence of his assignment; and Petitioner has not been forthcoming regarding his intentions to move to California, and has rather been deceitful. Respondent proffers they will be submitting Freedom of Information Act requests to obtain discovery to support the current hearsay evidence concerning Petitioner's assignment in California.

(ECF No. 68 at 4.)

The Court held the hearing on Petitioner's motion *in limine* on May 18, 2022. (ECF Nos. 41, 45, 54.) While Respondent's motion to continue the evidentiary hearing was filed the evening before, and despite it not being formally set for hearing nor filed with an application to hear the motion on shortened time, due to the proximity to the Convention Evidentiary Hearing, the Court discussed the merits of Respondent's motion to continue. On May 18, 2022, Savannah Wadsworth, Richard Min, Michael Banuchis, and Samantha Jacobson, appeared on behalf of Petitioner, while Drexwell Jones appeared on behalf of Respondent. (ECF No. 54.)

At the May 18, 2022 hearing, the Court indicated its tentative ruling was to deny the motion to continue the Convention Evidentiary Hearing, as issues of jurisdiction or whether the action was being maintained improperly could be addressed at the Convention Evidentiary Hearing, as testimony and evidence at the Convention Evidentiary Hearing could be pertinent to both the main claim, as well as Respondent's contentions. At the May 18, 2022 hearing, Respondent indicated she had just received from Petitioner's counsel, the Permanent Change of Station Order ("PCS Order") indicating that Petitioner was to be reassigned to Beale Air Force Base ("Beale AFB"), beginning on June 30, 2022. Petitioner argued that the stated purpose in the motion to continue was to obtain evidence regarding the PCS Order, and now it was provided; that the Petition was not moot; and that Petitioner could prove at the Convention Evidentiary Hearing that the Petition was not moot. Respondent emphasized that proceeding would cost the Respondent significant fees when the remedy may ultimately be moot by the time

1    a recommendation is adopted by the District Judge.

2       The Court expressed its concern that the PCS Order was not something the Court had

3    been provided yet.  The Court took the position as to the motion, having been filed the day prior,

4    Respondent was essentially asking the Court to pre-adjudicate the issue of mootness in relation

5    to the order of assignment, issues that would likely need some type of evidentiary hearing to

6    analyze.  At the hearing, the Court found it significant that the Petitioner, as the party moving the

7    litigation forward, emphasized from his perspective that he was put in this position by the alleged

8    wrongful retention of the children by Respondent, and the parties were nearing the precipice of

9    the Convention Evidentiary Hearing.  Petitioner maintained they had a good faith argument that

10   the order of reassignment did not moot the Hague Convention action.

11       The Court suggested that it would allow leeway at the Convention Evidentiary Hearing

12   for Respondent to inquire about the issue and took the matter under submission.  Nonetheless,

13   the Court made it clear at the May 18, 2022 hearing, that there was still a potential remedy of

14   sanctions available to Respondent, and that the Respondent had put Petitioner on notice of such

15   potential forthcoming sanctions motion based on improperly continuing or maintaining the

16   action.

17       Following the hearing, on May 19, 2022, the Court granted Petitioner's motion *in limine*

18   (ECF No. 45), as to proposed exhibits R-516, R-517, R-518, R-519, R-520, R-521, and R-522, or

19   any testimony related to such exhibits, without prejudice to Respondent's proffer at the time of

20   the Convention Evidentiary Hearing of such exhibits and testimony under a proper foundation

21   and potential proper basis of "another purpose" under Fed. R. Evid. 408(b).  (ECF No. 66.)

22   Therein, as relevant to Petitioner's instant motion for sanctions, the Court summarized the

23   parties' arguments presented at that time:

24  
25               R-522 is a draft stipulated settlement agreement with a caption
              identifying it as related to the parties' parallel state court divorce
              proceeding.  (See ECF No. 51 at 3-10.)  R516 through R521
26               appears to correspond to six pages of screenshots of text messages
              between the parties discussing potential settlement terms related to
              the state case and this action.  (See ECF No. 51 at 12-17.)
27  
28               Respondent contends that Petitioner's Hague petition is a "sham";
              that it is moot because Petitioner is going to be stationed in

1
2
3
4
5
6
7
8
9
10

California in the summer of 2022; that throughout the course of this proceeding, Petitioner has attempted to leverage the threat of a forced return of his children to Germany to coerce Respondent to give up her marital interest in his military retirement; and Petitioner is attempting to exclude the proposed settlement agreement where Petitioner offers to dismiss this action if Respondent disclaims his military pension and agrees to move near Beale Air Force Base in Sacramento, California; and text messages wherein he acknowledges his intent to serve at Beale Air Force Base.  (Opp'n 1-2.)   Aside from citing the text of Rule 408, Respondent has not submitted any caselaw or other authority in support of their specific arguments, however, Respondent submits that she designated the exhibits prior to learning Petitioner had orders to serve at Beale Air Force Base, with Respondent previously intending to offer the proposed exhibits on the issue of mootness of Petitioner's remedy, "which is arguably an exception under Federal Rule 408(b)"; but now, "Respondent will offer these exhibits on a request for sanctions., to establish the length of time Respondent [sic] has maintained a vexatious and frivolous Hague Convention petition."  (Opp'n 2.)

11

12
13
14

(ECF No. 66 at 3-4.)  As for the Petitioner's motion *in limine* to exclude introduction of exhibits related to settlement, the Court first noted it was receptive to the Petitioner's arguments concerning mootness:

15
16
17
18
19
20
21
22

The Court notes that it is receptive to Petitioner's highlighting that this petition is not moot given the arguments that: (1) Respondent unilaterally moved the children from one country to another, behavior which the Hague Convention is designed to prevent; (2) that while Respondent argues Petitioner is attempting to utilize this action as leverage in their divorce proceedings, Respondent's retention of the children in California can be similarly argued to be an attempt to remove the children to a more favorable jurisdiction to litigate their divorce, and this Hague Convention proceeding was precipitated by Respondent's leveraging of the Children and California court system, including her seeking of a protective order; and (3) that the Court is tasked with determining the Children's habitual residence immediately prior to the alleged wrongful retention in the summer of 2021; and that Petitioner in fact currently resides in Germany.  (Reply 2-3.)

23
24
25

(ECF No. 66 at 9.)  In light of the caselaw and arguments presented, the Court granted the motion *in limine*, but without prejudice to potential introduction at the Convention Evidentiary Hearing for a potential "another purpose" under Federal Rule of Evidence 408:

26
27
28

Based on the limited briefing and record before the Court on this motion *in limine* filed on shortened time, and given the exhibits are proffered in isolation without a proper foundation laid as to the potential introduction of these exhibits for a proper other purpose discussed above, the Court will not exclude these exhibits outright

11

1    at this juncture for *all* purposes.  Rather, the Court will grant the
motion and exclude the exhibits and testimony without prejudice to
2    consideration of introduction at the evidentiary hearing after
testimony and other evidence is presented, the parties' final pretrial
3    briefs are before the Court, and the Court can consider this
evidence in its proper context and whether it is proffered for a
4    potentially proper other purpose.  Accordingly, for all of the above
reasons, the Court will grant Petitioner's motion to exclude
5    proposed exhibits R-516, R-517, R-518, R-519, R-520, R-521, and
R-522, or any testimony related to same, to the extent the current
6    proffer encompasses an effort to prove or disprove the validity of a
disputed claim.  Fed. R. Evid. 408(a); Walker, 701 F.3d at 1117–
7    18.    However, Petitioner has failed to demonstrate that the
proffered evidence would be inadmissible on all potential grounds.
8    [citations]  The Court finds that full consideration of the proffer is
more proper at the time of the evidentiary hearing and the Court
9    can consider the evidence in its proper context.  See McConnell,
995 F.Supp.2d at 1167; Hitesman, 2016 WL 3523854, at *2
10    Jonasson, 115 F.3d at 440; Genzler v. Longanbach, No.
01CV1462-LAB (RBB), 2006 WL 8455146, at *11 (S.D. Cal. Oct.
11    6, 2006) ("The exclusionary portion of the Rule only applies when
the purpose of the evidence is to prove 'the validity or invalidity of
12    the claim or its amount," so that "an offer for another purpose is
not within the rule.'  Advisory Note to Rule 408.  Genzler agrees
13    not to mention the specific terms or amount of the settlement . . .
The court is inclined to grant the motion but **RESERVES** final
14    ruling until the issue arises in context at trial.") (emphasis in
original).

15

16  (ECF No. 66 at 10.)

17        On the same date, May 19, 2022, the Court issued an order denying Respondent's motion

18  to continue the Convention Evidentiary Hearing.  (ECF No. 68.)  The Court construed the motion

19  as a motion to amend a pretrial order which places the burden on the movant to demonstrate

20  amendment is necessary to prevent manifest injustice.  (Id. at 2-3 ("Given the nature of a Hague

21  Convention petition case, the fact that the evidentiary hearing here is akin to a trial in such

22  action, and the temporal proximity to the May 25, 2022 evidentiary hearing, the Court construes

23  Respondent's motion as a motion to amend a pretrial order.").)  Under the relevant standards and

24  arguments presented in the late-filed motion in relation the arguments proffered at the hearing,

25  the Court found the balance of considerations weighed in favor of denying Respondent's motion

26  and proceeding as scheduled into the Convention Evidentiary Hearing scheduled for May 25:

27    While the Court is concerned for the well-being of the children
who are the primary focus of these proceedings, and is receptive to
28    arguments concerning the Court's jurisdiction and whether this

matter is or may become moot, the Court finds that consideration of the relevant factors and the totality of the record before the Court, a continuance of the evidentiary hearing is not required to prevent manifest injustice.  The consideration of the relevant factors, the proximity to the evidentiary hearing, and the nature and goal of a Hague Convention proceeding, weigh in favor of denying the motion to continue.

The Court finds the degree of prejudice to the Petitioner would be substantial and that a continuance is not necessary to prevent manifest injustice to the Respondent.  The motion to continue the evidentiary hearing was filed on May 17, 2022, eight days before the evidentiary hearing, and only the day before the parties' respective witness lists, exhibit lists, and final trial briefs were due.  Petitioner would not have even had time to properly oppose this motion while concurrently in a state of unclarity on whether these proceedings were to move forward on the day the majority of the relevant pretrial filings were due.  There may be an ability to cure prejudice here, however, Petitioner, counsel, and witnesses have been selected, scheduled, and prepared to be examined; and travel arrangements and preparations have necessarily been made.  Under these circumstances, the Court finds it more appropriate and prudent to move forward and hold the evidentiary hearing.

The determination in this Hague Convention case is to determine the habitual residence of the children at the time of an alleged wrongful abduction or retention.  Petitioner was residing and working in Germany when the petition was filed.  Petitioner has adamantly requested this case be expedited, in line with the goals of the Convention.  See, e.g., Monasky v. Taglieri, 140 S. Ct. 719, 723 (2020) ("To that end, the Convention ordinarily requires the prompt return of a child wrongfully removed or retained away from the country in which she habitually resides.") (citing Convention Art. 12); Radu v. Shon, 11 F.4th 1080, 1084–85 (9th Cir. 2021) (main objective of the Convention and ICARA is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.").

However, "[t]he 'return remedy' is the Convention's 'central operating feature.' " Radu, 11 F.4th at 1086 (quoting Abbott v. Abbott, 560 U.S. 1, 9 (2010)).  The Court finds there may very well be merit to Respondent's contention that a remedy of return to Germany may be impracticable or impossible when a recommendation is adopted or declined to be adopted in this action.  Thus, and again, the Court is cognizant it must always consider the issue of whether there is proper jurisdiction.  However, an evidentiary hearing may actually be necessary to determine the issue of mootness.  Indeed, the Court is now in receipt of the final pretrial briefs filed on May 18, 2022, and the Court notes Respondent has provided a Ninth Circuit case on the issue of potential mootness of a Hague Convention case where a parent permanently moved to the country where the children were relocated to . . . . Gaudin v. Remis, 379 F.3d 631, 633, 636 (9th

1    Cir. 2004).  Therein, the court was directed to hold an evidentiary
     hearing on the issue to determine whether the petition would be
2    moot for such reason.

3    Here, Respondent has proffered she needs additional discovery on
     this issue.  However, the Court finds it more appropriate to proceed
4    with the scheduled evidentiary hearing, and will allow relevant
     evidence to be offered, and for questioning as to this issue.  While
5    the Respondent proffered more time is needed to complete
     discovery, the proffered mode of Freedom of Information Act
6    requests would likely result in significant delay where a Hague
     Convention case is to be expedited where possible.  Further, the
7    Court was made aware at the hearing held on May 18, 2022, that
     some form of evidentiary documentation was provided by
8    Petitioner to Respondent concerning the assignment to California.
     Petitioner can be examined in-person at the evidentiary hearing
9    and will be under oath.  The Court finds that a need for discovery
     on these specific issues does not present circumstances that will
10   result in manifest injustice.

11   (ECF No. 68 at 5-7 (footnotes omitted).)   Like at the May 18, 2022, hearing, the Court

12   emphasized sanctions could be warranted:

13   Further, the Court is assuredly concerned with honesty and
     integrity in representations between the parties and to the Court.
14   While there could be a valid claim of sanctionable conduct, under
     Rule 11 or otherwise, based on vexatiously continuing this
15   litigation in an improper attempt to leverage the state court
     negotiations, the Court does not find such concerns outweigh the
16   prejudice that the Petitioner will face if the hearing is moved
     within this close of proximity to the hearing date.   Again,
17   testimony or evidence will likely need to be fully developed on
     these issues, and the evidentiary hearing is a proper vehicle for
18   such evidence to be developed in.  See Gaudin, 379 F.3d at 633.

19   (ECF No. 68 at 7 n.3.)

20      **C.     Whether the Hague Convention Petition is Moot Under Ninth Circuit Law**

21         As a common theme throughout the arguments presented by both parties in their

22   respective motions is whether the Petitioner's case is rendered moot and at what point, the Court

23   turns to make findings as to this issue before turning directly to the motions.

24         1.    The Hague Convention General Legal Background

25         "The Hague Convention of the Civil Aspects of International Child Abduction provides

26   for the prompt return of abducted children so that the country of habitual residence may resolve

27   custody disputes."  Radu v. Shon, 11 F.4th 1080, 1083–84 (9th Cir. 2021).  The Convention was

28   adopted in 1980 by the Fourteenth Session of the Hague Conference on Private International

14

1  Law.  Asvesta v. Petroutsas, 580 F.3d 1000, 1003 (9th Cir. 2009).  "The Convention's goal is 'to

2  secure the prompt return of children wrongfully removed to or retained in any Contracting State;

3  and ... to ensure that rights of custody and of access under the law of one Contracting State are

4  effectively respected in the other Contracting States.' "  Asvesta v. Petroutsas, 580 F.3d 1000,

5  1003 (9th Cir. 2009) (quoting Hague Convention, art. 1).

6        Both the United States and Germany are signatories to the Convention.  See U.S.

7  Department of State, Bureau of Consular Affairs, U.S. Hague Convention Treaty Partners,

8  https://travel.state.gov/content/travel/en/International-Parental-Child-

9  Abduction/abductions/hague-abduction-country-list.html (last visited March 14, 2023); see also

10  Radu, 11 F.4th at 1085–86 (" 'The Hague Convention is a multilateral international treaty on

11  parental kidnapping' in force between the United States and Germany." (quoting Holder v.

12  Holder, 305 F.3d 854, 859 (9th Cir. 2002))).  "Federal district courts have jurisdiction over

13  actions arising under the Hague Convention pursuant to 22 U.S.C. § 9003."  Radu, 11 F.4th at

14  1085–86 (9th Cir. 2021) (quoting Flores Castro v. Hernandez Renteria, 971 F.3d 882, 886 (9th

15  Cir. 2020)); see also Convention Art. 18 ("The provisions of this Chapter do not limit the power

16  of a judicial or administrative authority to order the return of the child at any time.").

17        The drafters of the Convention sought "to address a particular type of 'kidnapping'

18  scenario: one in which a person, usually a parent, removes a child to, or retains a child in, a

19  country that is not the child's habitual residence in order 'to obtain a right of custody from the

20  authorities of the country to which the child has been taken.' "  Asvesta, 580 F.3d at 1003

21  (quoting Elisa Pérez–Vera, Hague Conference on Private International Law 428–29, ¶ 13 (1982)

22  (hereinafter, "Pérez–Vera Report ").  The Convention is directed at eliminating the motivation

23  for such wrongful removals or retentions, "by requiring the court of the 'requested State,' or the

24  country to which the child has been removed, to return a wrongfully removed or retained child to

25  his or her country of habitual residence, unless the removing party establishes an exception or

26  defense to return."  Asvesta, 580 F.3d at 1003 (quoting Hague Convention, art. 12).  The main

27  objective of the Convention and ICARA, its implementing statute, is "to secure the prompt return

28  of children wrongfully removed to or retained in any Contracting State" and "to ensure that

15

1   rights of custody and of access under the law of one Contracting State are effectively respected

2   in the other Contracting States." Radu, 11 F.4th at 1086 (quoting Convention Art. 1).  "The aim

3   is to '*prevent* parents from wrongfully taking children across national borders in order to shop

4   for a friendly forum in which to litigate custody.' " Radu, 11 F.4th at 1086 (quoting Gaudin v.

5   Remis, 415 F.3d 1028, 1036 (9th Cir. 2005)).  "Underlying this aim is the premise that the

6   Convention should deprive parties of any tactical advantages gained by absconding with a child

7   to a more favorable forum." Radu, 11 F.4th at 1086 (quoting Holder v. Holder, 392 F.3d 1009,

8   1013 (9th Cir. 2004) (Holder II)).

9        The central question is thus "*whether* a child should be returned to a country for custody

10   proceedings and not *what* the outcome of those proceedings should be." Radu, 11 F.4th at 1086

11   (quoting Holder II, 392 F.3d at 1013).  Until there is a determination on whether the child must

12   be returned to the other country, "the judicial or administrative authorities of the Contracting

13   State to which the child has been removed or in which it has been retained shall not decide on the

14   merits of rights of custody." Id. (quoting Hague Convention, art. 16.)  The Convention "rests

15   implicitly upon the principle that any debate on the merits of the question, *i.e.* of custody rights,

16   should take place before the competent authorities in the State where the child had its habitual

17   residence prior to its removal." Asvesta, 580 F.3d at 1003 (quoting *Pérez–Vera Report* at 430);

18   see also Convention, art. 19 ("A decision under this Convention concerning the return of the

19   child shall not be taken to be a determination on the merits of any custody issue.").  Therefore,

20   "[t]he 'return remedy' is the Convention's 'central operating feature.' " Radu, 11 F.4th at 1086

21   (quoting Abbott v. Abbott, 560 U.S. 1, 9 (2010)).  "To that end, the Convention ordinarily

22   requires the prompt return of a child wrongfully removed or retained away from the country in

23   which she habitually resides."   Monasky v. Taglieri, 140 S. Ct. 719, 723 (2020) (citing

24   Convention Art. 12).

25        2.   Ninth Circuit Law Favors Petitioner under the Established Facts

26        "Article III of the Constitution restricts the power of federal courts to 'Cases' and

27   'Controversies.' " Chafin v. Chafin, 568 U.S. 165, 171–72, 133 S. Ct. 1017, 1023, 185 L. Ed. 2d

28   1 (2013).  "Accordingly, '[t]o invoke the jurisdiction of a federal court, a litigant must have

1   suffered, or be threatened with, an actual injury traceable to the defendant and likely to be

2   redressed by a favorable judicial decision.' " Id. at 172 (quoting Lewis v. Continental Bank

3   Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)).  "Federal courts may not

4   'decide questions that cannot affect the rights of litigants in the case before them' or give

5   'opinion[s] advising what the law would be upon a hypothetical state of facts.' " Id. The "case-

6   or-controversy requirement subsists through all stages of federal judicial proceedings, trial and

7   appellate." Id.  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for

8   purposes of Article III—'when the issues presented are no longer live or the parties lack a legally

9   cognizable interest in the outcome.' " Already, LLC v. Nike, Inc., 568 U.S. 85, 91, 133 S. Ct.

10  721, 726–27, 184 L. Ed. 2d 553 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct.

11  1181, 71 L.Ed.2d 353 (1982)).

12      Petitioner argues Ninth Circuit case law is clear that a Hague Petition becomes moot only

13  *after* a party has permanently relocated.  Respondent argues the return remedy is central

14  operating feature and that remedy is rendered moot when a petitioner moves permanently to the

15  same country as the abductor, because there is no effective relief left.  Respondent submits that

16  as a military member, Michael's permanent change of station order must be requested and

17  approved; that once approved, backing out or withdrawing can affect likelihood of getting the

18  same assignment in future or impact career, and thus argues when Michael requested and

19  received approval to be reassigned to Beale AFB, his continuation of the Petition became moot.

20  (Resp. Mot. 6.)  Respondent emphasizes that having the children returned to Germany for a few

21  months knowing they will return to the United States serves no country's interest under the

22  Convention, and not the interests of the children.  (Resp. Mot. 6-7.)

23      The Court finds that under the most relevant and pointed caselaw in the Ninth Circuit,

24  this action was not moot until Petitioner physically moved back to the United States.   The

25  purpose of this action under the Hague Convention, prior to the Petitioner requesting dismissal,

26  was to determine the habitual residence of the children at the time of an alleged wrongful

27  abduction or retention.  It is undisputed that Petitioner was residing and working in Germany

28  when the Petition was filed.  It is also undisputed that Petitioner had not yet physically moved to

17

1   California when the motion to dismiss was filed on May 23, 2022.  (ECF No. 70.)  Petitioner has

2   adamantly requested this case be expedited, in line with the goals of the Convention.  See, e.g.,

3   Monasky, 140 S. Ct. at 723 ("To that end, the Convention ordinarily requires the prompt return

4   of a child wrongfully removed or retained away from the country in which she habitually

5   resides.") (citing Convention Art. 12); Radu, 11 F.4th at 1084–85 (9th Cir. 2021) (main objective

6   of the Convention and ICARA is "to secure the prompt return of children wrongfully removed to

7   or retained in any Contracting State" and "to ensure that rights of custody and of access under

8   the law of one Contracting State are effectively respected in the other Contracting States.").

9   "The 'return remedy' is the Convention's 'central operating feature,' "  Radu, 11 F.4th at 1086

10  (quoting Abbott, 560 U.S. at 9).

11          The Court previously noted in denying the motion to continue, (ECF No. 68 at 5-6), that

12  there could be merit to Respondent's contention that a remedy of return to Germany may be

13  impracticable or impossible when a recommendation is adopted or declined to be adopted in this

14  action, and that the Court was cognizant it must always consider the issue of whether there is

15  proper jurisdiction.   The Court noted an evidentiary hearing may actually be necessary to

16  determine the issue of mootness, and also noted in the final pretrial brief that Respondent had

17  provided a Ninth Circuit case on the issue of potential mootness of a Hague Convention case

18  where a parent permanently moved to the country where the children were relocated to, Gaudin,

19  379 F.3d 631.  Having received the parties' briefing on the sanctions motion, the Court finds the

20  holding of Gaudin weighs in favor of Petitioner's position based on the facts at hand.

21          The Ninth Circuit applied the rule of the case,[1]  from a prior appeal in that action, that if

22  "a petitioner moves permanently to the same country as the abductor, the petition is moot

23  because no effective relief remains for us to grant."   Gaudin, 379 F.3d at 636.   The Court

24  explained the application of the rule in relation to established principles guiding the law of

25  domicile:

26                  We therefore proceed to Gaudin's contention that the district court

---

27  [1]  The Ninth Circuit stated it decline[d] to revisit our decision in *Gaudin I* that, if a Hague Convention petitioner
    moves permanently to the same country as the abductor, the petition is moot because no effective relief remains for
28  us to grant. *Gaudin I,* which we follow as the law of the case."  Gaudin, 379 F.3d at 636.

erred in concluding that she had moved permanently to the United States. To address this argument, we must clarify the principles of law that govern whether a petitioner has made a permanent move to the same country as the abductor. *Gaudin I* framed the issue for the district court on remand as simply "whether Gaudin has moved permanently to Hawaii," 282 F.3d at 1184, or "relocated" permanently. *Id.; see also id.* at 1183. Neither the Hague Convention, nor its implementing legislation—which use the term "habitual residence"—provide guidance to the meaning of these terms. *See Mozes v. Mozes,* 239 F.3d 1067, 1075–76 n. 21 (9th Cir.2001) (distinguishing "habitual residence" from "domicile, which requires 'a combination of residence and intention of permanent or indefinite residence.' ") (quoting *Re B (minors)(abduction),* [1993] 1 F.L.R. 993, 998 (Eng.Fam.Div.)). Ultimately, the district court chose, in accordance with the parties' agreement, to apply the factors that federal courts use in determining domicile for purposes of diversity jurisdiction.

" 'Domicile' is, of course, a concept widely used in both federal and state courts for jurisdiction and conflict-of-law purposes, and its meaning is generally uncontroverted." *Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner–Lambert Co.,* 265 F.3d 853, 857 (9th Cir.2001) (citing *Lew v. Moss,* 797 F.2d 747, 749 (9th Cir.1986)). "A person residing in a given state is not necessarily domiciled there...." *Id.* A person generally assumes the domicile of his or her parents, and she may have only one domicile at a time. *See Lew,* 797 F.2d at 750–51. Domicile may be changed by being physically present in the new jurisdiction with the intent to remain there. *See Mississippi Band,* 490 U.S. at 48, 109 S.Ct. 1597; *Kanter,* 265 F.3d at 857. Thus, domicile includes a subjective as well as an objective component, although the subjective component may be established by objective factors.

*Gaudin,* 379 F.3d at 636–37. While the rule in *Gaudin* was followed as the law of the case, and domicile was the standard agreed upon by the parties in *Guadin,* the Ninth Circuit affirmed that utilizing domicile was the appropriate measure of whether one has permanently moved to another jurisdiction, and that permanence was relevant to mootness under the Convention:

Guided by our holding in *Gaudin I,* we agree with the district court's choice of domicile as the appropriate measure of whether one has moved permanently to a new jurisdiction. In *Gaudin I,* we carefully and repeatedly characterized the mootness question as whether Gaudin had moved "permanently" to Hawaii. As we explained: "[W]hen a petitioner relocates permanently to the same country in which the abductor and the children are found, she casts her lot with the judicial system of that country. When Gaudin purportedly relocated, she severed her ties with Canada and made Hawaii the proper forum to determine custody matters." *Gaudin*

*I*, 282 F.3d at 1183. We recognized that Gaudin's intent to remain in Hawaii, and not just her residence there, was critical because we also observed that if, on remand, it was shown that Gaudin had moved to Hawaii "for the sole purpose of regaining custody of the children to return to Canada," her petition would not be moot. *Id.* The traditional concept of domicile, as contrasted with mere residence, captures well the notion of permanence. *See Kanter,* 265 F.3d at 857; *Weible v. United States,* 244 F.2d 158, 163 (9th Cir.1957). We conclude that *Gaudin I* requires us to adopt domicile as the test for whether Ms. Gaudin's petition has been mooted by her having permanently relocated to the same country as the abductor. In addition, we note that the principles of domicile are familiar, well-settled, and easy to apply. *Mississippi Band,* 490 U.S. at 48, 109 S.Ct. 1597.

Gaudin, 379 F.3d at 637.

The Court did not make a determination of the underlying claims in this action, in other words, whether Germany was the country of habitual residence of the children prior to the alleged wrongful retention in the United States. The Court made no determination was to Petitioner's domicile. However, inherent in Respondent's arguments that the Petition became moot with the decision to transfer to California under an Air Force Assignment, is that prior to obtaining the ability to transfer, Petitioner was domiciled in Germany. But see Anderson v. Holder, No. CIV. 2:09-2519WBSJFM, 2010 WL 1734979, at *11 (E.D. Cal. Apr. 27, 2010) ("Despite Gitelman's presence in England for military service, Massachusetts remained his domicile because '[s]ervice personnel are presumed not to acquire a new domicile when they are stationed in a place pursuant to orders; they retain the domicile they had at the time of entry into the service.' " (quoting Charles Alan Wright, Arthur R. Miller. & Edward H. Cooper, 13 E Federal Practice and Procedure § 3617 at 567 (3d ed.))).

Unlike Gaudin, in the instant case, despite having a military order assigning him to Beale AFB, Petitioner had not yet actually relocated to the United States. While there is an argument that the second Gaudin decision was locked in by the law of the case from the first Gaudin decision, and that a different mootness test could apply, Respondent submitted no clear argument that the law in Gaudin is case-specific or that a different standard should apply. As discussed herein, the Court finds the totality of the evidence and testimony presented at the Sanctions Evidentiary Hearing demonstrates that Petitioner did not have a definitive PCS Order until May

1    12, 2022.  Thus, under the most relevant controlling legal standard from the Ninth Circuit
2    presented by the parties, and the totality of the facts and circumstances involving Petitioner's
3    efforts to litigate this case since its inception, the Court does not find the Petition was not moot
4    when Petitioner filed his motion to dismiss on May 23, 2022.  Gaudin, 379 F.3d at 636-37.

5         Other caselaw supports Petitioner in this regard, even if the Court were to attempt to
6    apply a different mootness test than that employed in Gaudin.  In Chafin v. Chafin, 568 U.S. 165,
7    133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013), the petitioner mother filed a Hague Petition seeking
8    return of the parties' child to Scotland.  The district court granted the petition, and the mother
9    subsequently removed the child to Scotland and initiated child custody proceedings.  On appeal,
10   the Eleventh Circuit held "in a one-paragraph order," that an appeal of a return order becomes
11   moot where the child has already returned to the foreign country, reasoning that it "became
12   powerless to grant relief."  Chafin, 568 U.S. at 171.  The Supreme Court rejected the Eleventh
13   Circuit's decision on grounds that the dispute between the parties was "still very much alive."
14   Id. at 173.  The Supreme Court noted "Mr. Chafin continues to contend that his daughter's
15   country of habitual residence is the United States, while Ms. Chafin maintains that E.C.'s home
16   is in Scotland [and that] Mr. Chafin also argues that even if E.C.'s habitual residence was
17   Scotland, she should not have been returned because the Convention's defenses to return apply."
18   Id. ("[o] On many levels, the Chafins continue to vigorously contest the question of where their
19   daughter will be raised.").  The Court finds Chafin is supportive of Petitioner's argument that the
20   dispute was very much alive as he inquired whether he could return to the United States for the
21   sake of being closer to his children in the event that he did not prevail in this litigation; and that
22   he only inquired as to the possibility of a reassignment order since he did not have a choice due
23   to Respondent's unilateral actions in wrongfully retaining the children in California.

24        Petitioner also highlights other caselaw outside the Ninth Circuit that suggests even a
25   move to the United States would not moot the petition.  See Neumann v. Neumann, 310 F. Supp.
26   3d 823, 834 (E.D. Mich. 2018).  The Michigan district court held that the petitioner-father's
27   relocation from Mexico to Michigan did not render his action seeking return of the children to
28   Mexico under the Hague Convention moot on grounds that the petitioner still vigorously

1   contested where the children should be raised, and which country's court should decide the issue.

2   The district court therefore held that the petitioner's move did not serve as a jurisdictional bar to

3   consideration of the petitioner's Hague claims.

4          Of note, the <u>Neumann</u> court essentially found the Supreme Court's holding in <u>Chafin</u>

5   implicitly rejected the Ninth Circuit's holding in <u>Gaudin</u>, and discussed the distinction between

6   mootness and merits:

> 7    The Supreme Court disagreed. Although the Court did not address
> 8    <u>Gaudin</u>, it effectively rejected the decision. It held that the dispute
>      between the parties was "still very much alive," because the parties
> 9    continued to disagree over the child's country of habitual residence
>      and the applicability of the Convention's affirmative defenses. The
> 10   court held that "[o]n many levels, the Chafins continue to
>      vigorously contest the question of where their daughter will be
> 11   raised." <u>Id.</u> at 173, 133 S.Ct. 1017. The mother argued that the case
>      was moot because the district court lacked authority under the
> 12   Convention to issue a "re-return order." The Court disagreed,
>      holding "that argument—which goes to the meaning of the
> 13   Convention and the legal availability of a certain kind of relief—
>      confuses mootness with the merits." Relying on its ruling in <u>Steel</u>
> 14   <u>Co.</u>, the Court held that "Mr. Chafin's claim for re-return—under
>      the Convention itself or according to general equitable principles—
> 15   cannot be dismissed as so implausible that it is insufficient to
>      preserve jurisdiction, and his prospects of success are therefore not
> 16   pertinent to the mootness inquiry." <u>Id.</u> at 174, 133 S.Ct. 1017.
>
> 17   Julie's argument similarly confuses mootness with the merits.
>      Steven still vigorously contests where the two minor children
> 18   should be raised and which country's courts should decide the
>      issue. As discussed infra, his relocation may affect the Court's
> 19   analysis of the affirmative defenses raised by Julie; but this does
>      not mean that his move serves as a jurisdictional bar to
> 20   consideration of his Hague claims. Regardless of his move to
>      Michigan, he still seeks an order returning the children to Mexico,
> 21   where he claims he will be able to move and work in the event his
>      petition is granted. As discussed below, Steven will not receive
> 22   such an order—not for lack of this Court's jurisdiction, but for lack
>      of merit.

23   <u>Neumann</u>, 310 F. Supp. 3d at 834.

24          Similarly, the Supreme Court's statement in <u>Chafin</u> concerning the distinction between

25   merits and mootness, further reinforces the Court's finding that the action was not moot, despite

26   the Respondent's arguments concerning the viability of the remedy of the Convention:

> 27   Ms. Chafin argues that this case is moot because the District Court
>      lacks the authority to issue a re-return order either under the
> 28   Convention or pursuant to its inherent equitable powers. But that

1
2
3
4
5
6
7
8
9

argument—which goes to the meaning of the Convention and the legal availability of a certain kind of relief—confuses mootness with the merits. In *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), this Court held that a claim for backpay saved the case from mootness, even though the defendants argued that the backpay claim had been brought in the wrong court and therefore could not result in relief. As the Court explained, "this argument ... confuses mootness with whether [the plaintiff] has established a right to recover ..., a question which it is inappropriate to treat at this stage of the litigation." *Id.,* at 500, 89 S.Ct. 1944. Mr. Chafin's claim for re-return—under the Convention itself or according to general equitable principles— cannot be dismissed as so implausible that it is insufficient to preserve jurisdiction, see *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), and his prospects of success are therefore not pertinent to the mootness inquiry.

10

Chafin, 568 U.S. at 174.

11
12
13

Accordingly, based on the above law, the Court finds the Petitioner's case was not moot before he physically returned to the United States, which did not occur before Petitioner filed the motion to dismiss this action on May 25, 2022.  (ECF No. 70.)

14
15

The Court now turns to Petitioner's motion for sanctions as related to the attachment of settlement negotiations to Respondent's opposition to Petitioner's motion *in limine*.

16

**D.** **The Court Shall Deny Petitioner's Motion for Sanctions**

17
18
19
20
21
22
23
24
25
26
27
28

On May 10, 2022, Petitioner filed a motion *in limine* seeking to exclude admission into evidence or any testimony related to settlement negotiations between the parties, including but not limited to Respondent's Proposed Exhibits, R-516 through R-522, which included communications and a document arising out of parties' settlement negotiations, including an unexecuted proposed stipulation of settlement including terms related to custody and visitation, spousal support, home sale proceeds, the disposition of Respondent's military pension, as well as several screenshots of text messages between the parties in which they discussed proposed settlement terms relating to custody, the status of this Hague Convention case, and division of their marital assets, including financial assets and other property on grounds that such confidential communications are protected pursuant to Federal Rule of Evidence 408.  (Pet. Mot. 1-2, citing ECF No. 45.)  On May 16, 2022, Respondent annexed such exhibits to her opposition

23

1   to the motion in limine, and Petitioner argues this is sanctionable conduct.  See Fink v. Gomez,

2   239 F.3d 989, 991 (9th Cir. 2001).

3          As noted in Fink, "the federal courts' inherent power to levy sanctions, including

4   attorneys' fees, for 'willful disobedience of a court order ... or when the losing party has acted in

5   bad faith, vexatiously, wantonly, or for oppressive reasons . . . [or on] counsel who willfully

6   abuse judicial processes.' "  Fink, 239 F.3d at 991 (quoting Roadway Express, 447 U.S. 752, 100

7   S.Ct. 2455, 65 L.Ed.2d 488 (1980)).   The Ninth Circuit further noted that "[s]anctions are

8   available for a variety of types of willful actions, including recklessness when combined with an

9   additional factor such as frivolousness, harassment, or an improper purpose[,] [and] [t]herefore . .

10  .  an attorney's reckless misstatements of law and fact, when coupled with an improper purpose,

11  such as an attempt to influence or manipulate proceedings in one case in order to gain tactical

12  advantage in another case, are sanctionable under a court's inherent power.")  Fink, 239 F.3d at

13  993–94.

14         Petitioner argues Respondent's counsel could have simply described the nature of such

15  documents and communications made during the course of settlement yet elected not to do so,

16  and rather, Respondent, in bad faith, chose to publicly reveal considerable details of the parties'

17  confidential settlement negotiations.  (Pet. Mot. 4.)  Petitioner further emphasizes that on May

18  17, 2022, Respondent's counsel filed a declaration in support of Respondent's motion to

19  continue evidentiary hearing, that disclosed a settlement communication, specifically,

20  referencing that on May 13, 2022, "Petitioner offered to dismiss his Hague Convention case if

21  Respondent agreed to accept a settlement in their divorce proceeding," (ECF No. 50-1 at ¶ 4),

22  when that offer made by Petitioner through counsel by email was marked "**FOR

23  SETTLEMENT PURPOSES ONLY NOT TO BE USED IN LITIGATION**."  (ECF No. 78-

24  1 at 4, 8.)

25         1.     The Court Does Not Find a Violation of FRE 408 Warranting Sanctions

26         Petitioner proffers that courts find willful disclosure of confidential settlement

27  negotiations to constitute behavior warranting the imposition of sanctions.  The cases cited by

28  Petitioner do not convince the Court sanctions are warranted against Respondent here.

1        Petitioner cites <u>S.M. v. J.K.</u>, proffered for the general proposition that the Ninth Circuit

2   has previously affirmed the imposition of sanctions for a party's failure to comply with the

3   Federal Rules of Evidence.   There, the Ninth Circuit held that the district court did not err in

4   imposing the sanction of excluding evidence after the defendant "undermined the purpose of

5   Rule 412 by openly filing a laundry list of Plaintiff's alleged sexual indiscretions."   <u>S.M. v. J.K.</u>,

6   262 F.3d 914, 919 (9th Cir. 2001), <u>amended,</u> 315 F.3d 1058 (9th Cir. 2003).   The Court does not

7   find the factual or legal analysis therein to be persuasive to the instant motion and circumstances.

8        Petitioner cites <u>Sample</u>, wherein the disclosing party responded as a reason for attaching

9   the settlement document, "that they only cite the Letter to show the date that they were put on

10  notice of Plaintiff's claims, and that Plaintiff waived any claim that the Letter was confidential."

11  <u>Sample v. City of Sheridan</u>, No. 10-CV-01452-WJM-KLM, 2012 WL 1156050, at *1 (D. Colo.

12  Apr. 6, 2012).   Respondent argues here, the documents were placed on an exhibit list in

13  anticipation of testimony offered by Petitioner and the theory of permissible use under 408(b)

14  was more than establishing a date as in <u>Sample</u>, as realistically here, the Court needed to look at

15  the actual documents to make a determination, and the Court here ultimately granted the motion

16  *in limine* without prejudice because the Court could envision a scenario where the documents

17  could meet the 408(b) exception.

18        The Court does not find <u>Sample</u> supportive of sanctions against Respondent.   There,

19  while the disclosure involved settlement documents, the defendant did not make any substantial

20  argument that the document was for another purpose under FRE 408.   <u>Sample</u>, 2012 WL

21  1156050, at *2 ("Defendants' argument that Plaintiff waived any claim of confidentiality to the

22  Letter is without merit . . . [w]hile Plaintiff may have produced the Letter to Defendants during

23  discovery, and used it in prior non-public appeals hearings (Response at 3–4), such disclosures

24  do not waive a party's right to confidentiality.").   Nonetheless, the Court agrees it may have been

25  more prudent for Respondent here to perhaps describe the documents, rather than attaching the

26  communications.   <u>Id.</u> ("Defendants could have simply advised the Court that they were on notice

27  as of March 11, 2009 concerning Plaintiff's discrimination claims or redacted the settlement

28  negotiation part of the Letter, but they elected not to do so.").   However, as explained below,

1    ultimately, this does not warrant sanctions given the totality of the circumstances, and the initial

2    attachment in opposition was for the adjudication of a motion *in limine* and the Court would

3    require reviewing the documents in question.  Finally, in Sample, the only sanction issued was to

4    reimburse the plaintiff for their fees incurred in filing the motion to strike the document from the

5    record.  <u>Sample</u>, 2012 WL 1156050, at *3 (D. Colo. Apr. 6, 2012) ("Sanctions are AWARDED

6    to Plaintiff in the form of payment by Defendants' counsel to Plaintiff of the attorney's fees

7    reasonably incurred by Plaintiff in connection with the filing of his Motion to Strike.").  Thus,

8    this case is not persuasive as to the sanctions sought, particularly given there is not even a motion

9    to strike the references here, and thus does not appear at this juncture, that there is any harm or

10   prejudice to Petitioner that they are seeking to alleviate due to the documents being in the public

11   record.

12        Petitioner cites to <u>United States v. State of Or.</u>, 915 F.2d 1581 (9th Cir. 1990), however,

13   that is an unpublished decision from 1990, and therefore is not citable under Ninth Circuit Rule

14   36-3.  Further, the case involved a violation of a protective order and did not contain any

15   discussion of FRE 408 or settlement materials.

16        Next, Petitioner cites <u>Crimson Trace</u>, but the case contained no discussion of FRE 408,

17   nor any attempt to present an argument or realistic justification by the disclosing party.  <u>See</u>

18   <u>Crimson Trace Corp. v. LaserMax, Inc.</u>, No. CV 09-57-HA, 2011 WL 13371311, at *2 (D. Or.

19   Feb. 3, 2011) ("Plaintiff offers no adequate justification or explanation for publicly (and

20   intentionally) filing a document containing multiple references and quotations to confidential

21   proceedings.").

22        <u>E-Z Bowz</u>, is not instructive, as there, the court expressly assumed for purposes of the

23   opinion that the disclosing party did not violate FRE 408.  <u>E-Z Bowz, L.L.C. v. Pro. Prod. Rsch.</u>

24   <u>Co.</u>, No. 00CIV.8670(LTS)(GWG), 2003 WL 22416174, at *1 (S.D.N.Y. Oct. 23, 2003) ("The

25   Court will not adjudicate this issue, however, and thus—for purposes of this Opinion and Order

26   only—will assume *arguendo* that PPR is correct in its contention," that the documents were "not

27   offered to prove the invalidity of E–Z Bowz's claim but for some other purpose allowable under

28   Fed.R.Evid. 408.").  Instead, the court there found the issue "to be determined [was] whether—

1    independent of any arguments regarding admissibility under Rule 408—PPR violated the Court's

2    Order directing that '[a]ll communications made as part of the conference process are strictly

3    confidential.' " <u>Id.</u>   The court found its standing order was violated by counsel, however,

4    concluded that it was "unnecessary to impose a financial sanction in order to deter PPR's counsel

5    from engaging in this sort of conduct in the future," and instead, counsel were "admonished to

6    adhere carefully in the future to this Court's and any other court's orders regarding the

7    confidentiality of settlement discussions." <u>Id.</u> at *3.   If anything, the case weighs in favor of not

8    imposing monetary sanctions against Respondent.

9         Similarly in <u>Bernard</u>, there was no discussion of FRE 408, and instead, the court found

10   counsel violated the court's "order and the confidentiality provisions willfully and deliberately,

11   that he did so in an effort to undermine the mediation process in this case, and that the violation

12   was serious and egregious." <u>Bernard v. Galen Grp., Inc.</u>, 901 F. Supp. 778, 784 (S.D.N.Y.

13   1995).

14        Thus, the Court does not find any of the cases cited in Petitioner's motion to be

15   persuasive in finding sanctions warranted against Respondent for violation of FRE 408.

16   Respondent argues in opposition that Rule 408's exception for another purpose applies and

17   defeats Petitioner's request for sanctions here, and prior to the Convention Evidentiary Hearing,

18   Respondent anticipated two themes: (1) that Petitioner maintained his Convention case to put

19   pressure on Respondent to make concessions related to the division of marital property; and (2)

20   that the remedy of return to Germany was moot because Petitioner had approval to be reassigned

21   to California.   Respondent submits that while she recognized statements made in settlement

22   negotiations could not be used to disprove the validity of the Petitioners claim, Respondent

23   anticipated Petitioner's testimony would open the door for admissibility of the proposed exhibits

24   on these other grounds.   Respondent argues that attaching the documents to Respondent's

25   opposition to Petitioners motion *in limine* was not a bad faith scheme to publicly disclose

26   settlement negotiation but an attempt to aid the Court in rendering a ruling, and under

27   Petitioner's theory, a court would never see the actual evidence before making a ruling under

28   Rule 408(b), which appears inconsistent with the structure of FRE 408 and federal practice.

1    Respondent also argues that if the Convention proceeding is a sham because Petitioner

2 never had any intention of utilizing the return remedy, and the German court was never going to

3 determine custody because he knew he was returning to the US, his attempt to leverage the

4 Convention proceeding was abusive, vexing, fraudulent and in bad faith.   Respondent

5 emphasizes she moved for a continuation of the evidentiary hearing and to open discovery based

6 on Petitioner's misconduct of continuing a case for which he knew the remedy was moot, and

7 upon being confronted by counsel for Respondent that continued prosecution was vexatious and

8 sanctionable, Petitioner doubled down, and Respondent submits that apprising the Court of

9 Petitioner's recalcitrance was not an attempt to offer evidence to disprove the validity of the

10 claim, but to show his continued bad faith.

11    Petitioner replies that Respondent cannot justify her violation of FRE 408 for the purpose

12 of showing Petitioner's Hague Petition was moot on grounds that he had a reassignment order

13 because the question of whether Petitioner received a reassignment order is irrelevant to the

14 question of whether the Petition was moot, and Petitioner argues Ninth Circuit case law is clear

15 that a Hague petition does not become moot until a petitioner permanently moves to the country

16 in which the respondent and children are located.   Gaudin, 282 F.3d at 1182.   Petitioner also

17 argues that FRE 408(b) does not list any such exceptions related to demonstrating the Petitioner

18 was improperly maintaining the action.   Helen of Troy Ltd. v. John Paul Mitchell Sys., Inc., No.

19 EP-05-CA-365-FM, 2007 WL 1858819, at *8 (W.D. Tex. June 26, 2007) ("[A]lthough Federal

20 Rule of Evidence 408(b) sets forth certain exceptions to the general rule against the admissibility

21 of statements made in furtherance of settlement, Plaintiffs have not shown that any of these

22 exceptions apply in the present case . . . Plaintiffs do not contend they wish to offer Jacobellis's

23 references to counsels' advice to show Jacobellis's bias or prejudice, to negate Defendant's

24 contention of undue delay, or to prove Defendant attempted to obstruct a criminal investigation

25 or prosecution."); McDonald v. Townsquare Media, LLC, No. CV 12-203-M-DLC, 2014 WL

26 12600456, at *4 (D. Mont. Mar. 11, 2014) ("[E]vidence related to settlement negotiations may

27 be admitted when offered in accordance with one of the narrow exceptions outlined in Federal

28 Rule of Evidence 408(b).").

1    The Court above found in favor of Petitioner as to the issue of mootness.  Nonetheless,

2  the parties' briefing as to the motion *in limine* did not present arguments as to <u>Gaudin</u>, and thus

3  the issue of mootness does not foreclose finding Respondent did not violate FRE 408 in a

4  manner that would warrant sanctions.  For one, Respondent did not have clear information at the

5  time the opposition was filed as to when Petitioner could be moving to California, as evidenced

6  by her informal attempts to investigate through contacting mutual family contacts/military

7  personnel.  Further, Respondent indicates that prior to the Convention Evidentiary Hearing,

8  Respondent anticipated a theme at the hearing would be whether Petitioner maintained his

9  Convention case to put pressure on Respondent to make concessions related to the division of

10  marital property.

11    While Petitioner focuses on the express exceptions listed in FRE 408 ("proving a

12  witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct

13  a criminal investigation or prosecution"), the FRE 408's listing of these exceptions and "use of

14  the phrase 'such as' implies that the ensuing list is not exhaustive, but is only illustrative."

15  <u>United States v. Technic Servs., Inc.</u>, 314 F.3d 1031, 1045 (9th Cir. 2002), <u>overruled on other</u>

16  <u>grounds by</u> <u>United States v. Contreras</u>, 593 F.3d 1135 (9th Cir. 2010); <u>Rhoades v. Avon Prod.,</u>

17  <u>Inc.</u>, 504 F.3d 1151, 1161 n.9 (9th Cir. 2007) ("The 'other purpose' need not be specifically

18  mentioned.").  The Ninth Circuit discussed the non-exhaustive nature of the Rule's exceptions in

19  <u>Rhoades</u> in relation to the underlying policy goals:

20
21
22
23
24
25

> Avon makes much of the "policy behind" Rule 408, as if any
> recognition of statements made during settlement will ruin the
> "freedom of communication with respect to compromise" that the
> Rule protects. *Clemco Indus. v. Comm. Union Ins. Co.,* 665
> F.Supp. 816, 829 (N.D.Cal.1987). Yet the Rule, by its own terms,
> is one of limited applicability. In other words, Rule 408 is designed
> to ensure that parties may make offers during settlement
> negotiations without fear that those same offers will be used to
> establish liability should settlement efforts fail. When statements
> made during settlement are introduced for a purpose unrelated to
> liability, the policy underlying the Rule is not injured.

26  <u>Rhoades</u>,504 F.3d at 1161–62.  Citing to <u>Rhoades</u>, in <u>Am. Gen. Life Ins. Co. v. James</u>, the court

27  found the evidence was not offered to prove the validity or amount of the claim, but for the

28  purpose of showing an insurer's attempt to condition the settlement of a breach of contract claim

1    on the release of a bad faith claim may be used as evidence of bad faith.  Am. Gen. Life Ins. Co.
2    v. James, No. C-14-04242 DMR, 2015 WL 730010, at *5–6 (N.D. Cal. Feb. 19, 2015) ("The
3    court finds that the settlement communications contained within the challenged portions of the
4    Counterclaim are not offered to prove the validity or amount of a disputed claim, but rather for
5    another purpose, namely, as evidence of AGLIC's course of conduct.  Therefore, those
6    communications do not fall within the ambit of Rule 408, and are not subject to a motion to
7    strike.").

8         The Court finds the balance of arguments and law weighs against sanctioning Respondent
9    for a violation of FRE 408 on the record before the Court.  Mottley v. Spillan, No. 2:07-CV-384,
10   2008 WL 926580, at *3 (S.D. Ohio Apr. 3, 2008) ("Rule 408 prohibits consideration of
11   settlement terms or negotiations to prove the validity or invalidity of his claims[,] [b]ut Rule 408
12   does not prohibit introduction of the fact of a settlement that would moot a case regardless of the
13   merits-*the validity or invalidity*-of the underlying claims."); Am. Gen. Life Ins. Co., 2015 WL
14   730010, at *5–6 ("[T]he settlement communications . . . are not offered to prove the validity or
15   amount of a disputed claim, but rather for another purpose, namely, as evidence of AGLIC's
16   course of conduct."); 360Heros, Inc. v. Mainstreet Am. Assurance Co., No.
17   517CV549MADDEP, 2019 WL 355333, at *2 (N.D.N.Y. Jan. 29, 2019) ("None of these
18   arguments fall within the categories of impermissible purposes under Rule 408(a) [and] [i]ndeed,
19   cases have found that evidence of a settlement is admissible when it is used to either establish or
20   attack the court's jurisdiction.");  see also Riverkeeper, Inc. v. TCI of NY, LLC, No.
21   120CV1023MADDJS, 2021 WL 860578, at *2 (N.D.N.Y. Mar. 8, 2021) (noting same other
22   purpose of determining jurisdiction).  Additionally, the cases cited by Petitioner discussed above,
23   demonstrate that based on this record at least, monetary sanctions would not be warranted.

24        The Court concludes that there was an arguable good faith basis for counsel to attempt to
25   introduce the exhibits at the then upcoming Convention Evidentiary Hearing.  While the Court
26   agrees it may have been more prudent for Respondent to, at first describe the documents rather
27   than attaching them, as explained at the hearing on the motion *in limine*, this Court routinely and
28   uniformly is provided access to documents that are the subject of motions in limine so that the

1  Court can make an informed decision.

2  Accordingly, for these reasons, the Court does not find sanctions for violation of FRE

3  408 should be imposed, and shall deny Petitioner's motion for sanctions for violation of FRE

4  408.  The Court now turns to consider Petitioner's request for sanctions under the California

5  Rule of Professional Conduct.

6  2.  The Court Does Not Find a Violation of Rule 8.4(c) of the Rules of Professional
   Conduct Warranting Sanctions

7

8  Rule 8.4(c) of the California Rules of Professional Conduct provides that it is

9  professional misconduct to "engage in conduct involving dishonesty, fraud,* deceit, or reckless

10  or intentional misrepresentation."

11  Petitioner argues Respondent violated Rule 8.4(c) of the Rules of Professional Conduct

12  of the State Bar of California by making numerous statements that not only leave out pertinent

13  facts in an effort to deceive the Court, but which also intentionally misrepresent herself as a

14  victim of coercion.  Pointing to Respondent's statement that Petitioner "contemplated a move to

15  Beale [AFB] earlier in the year but abandoned the effort," (ECF No. 71 at 1:25-26), Petitioner

16  argues this misleads the Court into believing that Petitioner contemplated a transfer on his own

17  accord and that he proposed that he move to Beale AFB.  (Pet. Mot. 5.)  Petitioner argues the

18  reality is that Respondent alone suggested, numerous times and while depriving Petitioner of

19  contact with his children, that Petitioner move and if it was not for such suggestion, Petitioner

20  would have never informally inquired into the possibility of being transferred.  (Id.; see also

21  Decl. Michael Krause Supp. Mot. Dismiss ¶¶ 2-4, ECF No. 70-1.)  As for Respondent's proffer

22  that Petitioner "kept his Hague Convention case going to exert pressure on Respondent in their

23  'global settlement' discussions," (ECF No. 71 at 2:7-8), Petitioner argues Respondent omits the

24  key fact that she is the one who made the global settlement proposal in the first place.

25  Specifically, Petitioners proffer that while it is true that Petitioner's counsel drafted the global

26  settlement proposal, the terms as written were proposed by Respondent in text message, and

27  Respondent's counsel, Mr. Drexwell Jones, contacted Petitioner's counsel numerous times to

28  ensure that his client's proposal was drafted.  Petitioner argues the settlement discussions only

31

1  fell apart, not because Respondent did not agree, but because her state court counsel, Mr. Logan

2  McKechnie, threatened to drop her as a client if she signed the proposed global settlement.

3  Petitioner argues Respondent's assertion that she fell victim to "pressure" from Petitioner is an

4  intentional misrepresentation designed to mislead the Court into believing that Petitioner kept

5  this Hague action going to coerce Respondent into a global settlement.  (ECF No. 78-1 at 5.)

6          Respondent counters that Respondent is not at all sure such an account is accurate as

7  Petitioner had sought a Director of Operations position for many years without success and such

8  a position became available at Beale AFB, so Respondent does not know and cannot say he

9  would not have applied for the position even if she had stayed with Michael in Germany.

10  Respondent argues an omission on such a disputed point was not an attempt to mislead the

11  Court.  Respondent also submits vehement disagreement with the proffer that Respondent was

12  the sole person with the idea for the global settlement agreement, but in either regard, argues any

13  conduct falls short of Rule 8.4(c) conduct as there was no intention to engage in dishonesty,

14  fraud, deceit, or reckless or intentional misrepresentation, and Respondent stands by her

15  representation of the evidence.  (Resp. Opp'n 2.)

16          The Court cases cited by Petitioner to be distinguishable and do not provide support for

17  imposing sanctions based on the proffered omission here.  Petitioner replies that Respondent has

18  undoubtedly violated Rule 8.4(c) by grossly misrepresenting the facts surrounding the parties'

19  settlement negotiations to this court.  In re Spikes, 837 F. App'x 469, 471 (9th Cir. 2020).  In that

20  case, the counsel had in fact filed a disability action on his own behalf and misrepresented such

21  purpose in relation to the ongoing work his client and he were doing in bringing such lawsuits.

22  In re Spikes, 837 F. App'x at 471 ("The district court's order was not clearly erroneous and the

23  district court committed no error of law or abuse of discretion when it concluded that Bentley

24  misrepresented his purpose for filing the state court lawsuit [in violation of Rule 8.4 as]

25  Bentley's state court complaint contained boilerplate language implying that he filed that action

26  against defendants because he encountered access barriers while visiting defendant's business as

27  a prospective customer[,] [h]owever, in response to the Order to Show Cause, Bentley amended

28  his state court complaint and represented to the district court that he entered the defendant's

1    business both as a customer and for the purpose of inspecting the premises for his client [and]

2    [such] lack of candor with the courts as to his purposes for visiting the defendant's business was

3    a sufficient basis for disqualification.").

4            While Respondent asserts she is not sure whether it is true that Petitioner only considered

5    moving to Beale AFB due to Respondent's act of absconding with their children, Petitioner

6    replies that Respondent and her counsel, despite such claims of ignorance, know full well that

7    Respondent's unilateral wrongful retention of the children in California is the sole reason

8    Petitioner decided to relocate to California, and Respondent is now attempting to muddy the

9    waters.  (ECF No. 83 at 3.)  In this regard, Petitioner argues Rule 8.4(c) not only forbids

10   affirmative false statements of fact but also misleading omissions:

11                  Finally, this Court believes it is important to make clear that it is
                    troubled by SPI's counsel's behavior and decisions with respect to
12                  this particular incident. Such conduct is out of the ordinary and the
                    Court takes SPI's counsel at its word that it will not occur again.
13                  Local Rule 180 explicitly prohibits "any conduct that degrades or
                    impugns the integrity of the Court or in any manner interferes with
14                  the administration of justice." E.D. Cal. Local Rule 180(e). The
                    ABA Model Rules forbid all "conduct involving dishonesty, fraud,
15                  deceit, or misrepresentation." Model Rule of Professional Conduct
                    R. 8.4(c). These rules not only forbid affirmative false statements
16                  of fact, but misleading omissions. "Misrepresentations can also
                    occur by partially true but misleading statements or omissions that
17                  are the equivalent of affirmative statements." Model Rule of
                    Professional Conduct 4.1, Comment 1. Here, Schaps was
18                  instructed to "attempt to stay confidential" (Schaps' Decl. (Doc. #
                    107–1) ¶ 5). Such an instruction is difficult to reconcile with SPI's
19                  position that it had nothing to hide and did nothing wrong. Instead
                    of identifying himself as counsel for SPI, Schaps stated only his
20                  full name and that he was a member of the public. Schaps' Decl. ¶
                    17. Even if Schaps did not make an affirmative false statement,
21                  omitting that he represents SPI is an ethical lapse because Schaps
                    was not at the Forest Service tour simply as an interested citizen,
22                  but as an attorney gathering evidence to be used in litigation.
                    While Schaps had an absolute right to attend the tour, as a
23                  practicing attorney he is held to a higher standard of ethical
                    behavior than a general member of the public, particularly when he
24                  is intimately involved in litigation against the tour's sponsor. Such
                    is clearly the intent behind Local Rule 180(e) and Rule 2–100.
25                  Zealous advocacy overcame professional responsibility in this
                    particular instance. It should not, and, the Court is certain, will not
26                  happen again.

27   United States v. Sierra Pac. Indus., 759 F. Supp. 2d 1215, 1218 (E.D. Cal. 2011).  The Court

28   notes that Sierra dealt with the Model Rule, not the California Rule.  Nonetheless, 8.4(c) is

                                                      33

1   identical in both sets of rules.   However, the comment to the Model Rule discussed in the

2   opinion, does not appear in the California version.   Thus, the Court's discussion is not *directly*

3   applicable.   Further, the Court would not find the Respondent's statement that Petitioner

4   "contemplated a move to Beale [AFB] earlier in the year but abandoned the effort," to be an

5   omission of any fact that would rise to the level of a misrepresentation that is the equivalent to an

6   affirmative statement that Petitioner sought the move to Beale AFB completely irrespective of

7   the ongoing child custody dispute and Convention case.   In <u>Sierra</u>, the actions by counsel were

8   clearly distinguishable in the deception through the omission, in light of the duties as an attorney

9   in discovery and investigation in relation to opposing parties and clients.   The Court does not

10   view any realistic threat from the Respondent's statements that would mislead the Court into

11   believing the Convention case had no impact on Petitioners potential move.

12        Petitioner proffers that in <u>In re Smith</u>, 348 Or. 535, 550–51, 236 P.3d 137, 146 (2010),

13   the Ninth Circuit held that attorneys violated Rule 8.4(a)(3) by making statements to the court

14   that were false and which they knew to be false, and that such statements were intended to

15   mislead employees of a corporation that they were authorized to take over a clinic.   (Pet. Reply

16   4, ECF No. 83 at 4.)   Petitioner argues that <u>Smith</u> is instructive here because Respondent's

17   misleading omission of the fact that she played a major role in causing Petitioner to inquire into

18   the possibility of reassignment to the U.S. is undoubtedly material, and Respondent's entire (and

19   incorrect) argument that the Hague Petition was moot hinges on the events surrounding

20   Petitioner's decision to relocate to California.

21        However, the opinion in <u>Smith</u> was in fact issued by the Oregon Supreme Court

22   concerning the Oregon rule, not by the Ninth Circuit under the California rule.   <u>Smith</u>, 348 Or. at

23   550–51.   The Oregon rule does not contain a provision that contains the word reckless, but

24   instead, the most similar provision appears to be where Oregon Rule of Professional Conduct

25   8.4(a)(3) states that it is professional misconduct for a lawyer to: "engage in conduct involving

26   dishonesty, fraud, deceit or misrepresentation that reflects adversely on the lawyer's fitness to

27   practice law."   The Court finds the discussion in <u>Smith</u> not directly relevant to Petitioner's

28   argument here.   First, the California statute, as to misrepresentation, specifically qualified it with

1    reckless or intentional, stating it is professional misconduct to "engage in conduct involving

2    dishonesty, fraud,* deceit, or reckless or intentional misrepresentation."  Cal. R. Prof. Cond.

3    8.4(c).  Further, in <u>Smith</u>, the offending party "made statements to several individuals that he had

4    an order or some other written authorization from the Attorney General or a court permitting the

5    takeover," the statements were false and the accused knew them to be false," and "the statements

6    were intended to convince the employees of the corporation or the police that Leveque was

7    authorized to take over the clinic and therefore that they should permit her to do so."  <u>Smith</u>, 348

8    Or. at 551.  The Court finds the circumstances wholly distinguishable.

9       Accordingly, the Court does not find Respondent's statement that Petitioner

10    "contemplated a move to Beale [AFB] earlier in the year but abandoned the effort," or the

11    statements concerning the drafting of the settlement agreement, to be reckless or intentional

12    misrepresentations to constitute a violation of California Rule of Professional Conduct 8.4(c).  In

13    sum, Respondent's statement of contemplation does not foreclose the possibility there are other

14    considerations behind the Petitioner's contemplation.  The Court does not find such action

15    warrants monetary sanctions or other sanctions.  The Court shall deny Petitioner's motion for

16    sanctions.

17      **E.**      **Respondent's Motion for Sanctions**

18       Respondent's motion first focuses on Petitioner's statement made in support of his

19    motion to dismiss filed on May 23, 2022, wherein Michael declared, in part:

20
21          4.    After our settlement did not materialize, I ceased actively
         pursuing the new assignment but the option of being assigned to
         Beale, CA was later presented to me by my superiors.

22
23          5.    The harsh reality is that I was not sure whether I would win or
         lose this Hague proceeding and ultimately, the most important
24          thing to me is being close to my Children. As a result, I did not
         want to assume that they would be coming back to Germany and
25          believed that the most prudent thing was to have a back-up plan in
         case that did not happen.

26          8.   I also had no choice in whether I would be granted a chance to
         relocate to Beale, CA as that is a decision left to my superiors.
27          When that opportunity presented itself, on or around May 12,
         2022, I had to decide whether I wanted to stay in Germany and
28          take the chance with this case or move to California and focus on
         my relationship with my Children. It has been almost a year that I

1
2
3

> have not had physical contact with them and the thought of waiting
> several more weeks or months or even longer while a decision was
> made (including any chance of appeal) was not a risk I wanted to
> take.

4   (Michael Krause Decl. Supp. Mot. Dismiss ¶¶ 4, 5, 8, ECF No. 70-1 at 1.)  Respondent argues

5   Michael's declaration is not credible, as this cannot be the manner the Air Force proceeds in

6   staffing assignments.  (Resp. Mot. 2.)  As discussed above when summarizing the May 18, 2022

7   hearing, and subsequent orders of the Court, Respondent received the PCS Order on May 18,

8   2022.  Specifically, Respondent emphasizes it was at 9:39 a.m., via email from Petitioner's

9   counsel, "twenty-one minutes before a long scheduled hearing where the subject of his

10  reassignment was likely to be broached."  (Id.)  Respondent submits that had she "not forced the

11  issue, Petitioner appeared more than willing to allow the court to engage in three days of

12  evidentiary hearings and untold time considering the evidence and rendering a decision for a

13  remedy he absolutely knew would never come to pass."  (Id.)

14      Respondent proffers Petitioner and his counsel signed a global settlement agreement,

15  wherein Petitioner agreed that he shall transfer from Germany to Beale AFB in California.

16  (Resp. Mot. 3.)  Respondent questions how Petitioner could sign such document without already

17  having approval to transfer.  Respondent highlights that in response to requests for admission,

18  Petitioner denied contemplating an assignment in the United States.  (Decl. Drexwell Jones

19  Supp. Resp. Mot. ("Jones Decl.") ¶ 6, ECF No. 79-1 at 1.)  Respondent argues the inference is

20  clear that Petitioner and counsel knew he would be transferring by February 4, 2022, and the

21  remedy sought in the Petition was moot, likely sometime in January given the signing of the

22  settlement agreement in February of 2022.

23      Moving forward to the period preceding the Convention Evidentiary Hearing,

24  Respondent declares she learned the family's Germany house was up for sale in early May of

25  2022.  This prompted her to informally investigate whether Petitioner was moving, and multiple

26  sources reported to Respondent that Petitioner had been reassigned to Beale AFB.  (Resp. Mot.

27  4; Decl. Tara Krause Supp. Resp. Mot. ("Tara Decl.") ¶¶ 1, 2, 4-7, ECF No. 79-2 at 1.)

28      On May 12, 2022, Respondent's counsel contacted Petitioner's counsel, and Petitioner's

1   counsel denied being aware of the Michael's reassignment to Beale AFB.  (Resp. Mot. 4; Jones

2   Decl. ¶ 7.)   While Respondent's counsel accepts counsel's representation, Respondent argues

3   counsel should have had conversations in regard to the responses to the requests for admission.

4           On May 12, 2022, Respondent notified Petitioner she would seek sanctions under Rule

5   11 and 28 U.S.C. § 1927 to the extent Petitioner continued the petition.  (Jones Decl. ¶ 7.)   On

6   May 17, 2022, Respondent served but did not file a Rule 11 sanctions motion.  (Jones Decl. ¶ 8.)

7           Respondent highlights that in mid-April 2022, Petitioner requested a stipulation for

8   visitation with the children from June 15, to July 1, 2022.  (See Decl. Savannah C. Wadsworth ¶

9   3, ECF No 41-2 at 1, ECF No. 79-1 at 60; Jones Decl. ¶ 9.)  Respondent argues this request lines

10  up with the dates of the anticipated reassignment order, as the PCS Order identifies June 30,

11  2022, as the reporting date at Beale AFB.  (Resp. Mot. 4.)

12          Respondent argues that Lt. Col. Brown knew as early as April 22, 2022, that Michael was

13  going to be the Director of Operations for Beale AFB, and that he has sought a Director of

14  Operations position for approximately 10 years as the assignment is an important step to

15  becoming a Colonel.  (Tara Decl. ¶ 10.)   Respondent argues based on her experience, the

16  assignment process takes four to six months, and by the time permanent change of station orders

17  are issued, the determination has been made for months.  (Resp. Mot. 5; Tara Decl. ¶¶ 8-9.)

18          Thus, given it is undisputed that he knew by May 12, 2022, he was permanent reassigned,

19  and other evidence shows he and at least some counsel knew from January or early February of

20  2022, that he was going to be reassigned, Respondent argues sanctions are warranted.

21          1.      The Court Denies the Motion for Rule 11 Sanctions

22          Respondent argues sanctions are proper under Federal Rule of Civil Procedure 11

23  because at least by May 12, 2022, Petitioner and counsel knew he was permanently moving to

24  California despite knowing the remedy in the Hague Convention was moot, and then continued

25  filing numerous briefs and other documents ahead of the evidentiary hearing set for Mary 25,

26  2022.  In sum, Respondent argues that at some point, Petitioner knew the only remedy was

27  ineffectual because he would be in California.  See Itel Containers Int'l Corp. v. Puerto Rico

28  Marine Mgmt., Inc., 108 F.R.D. 96, 103 (D.N.J. 1985) ("It is also true that no precedent has been

1  found in which a party (or counsel) has had sanctions imposed for not raising lack of subject

2  matter jurisdiction when first aware of it, if it is raised eventually before trial . . . [t]here is,

3  however, more to the conduct of defendant and its counsel than a simple non-disclosure . . . was

4  not here a mere negligent failure to disclose [but] part of a plan and scheme to attenuate the

5  proceedings.").

6        Petitioner emphasizes the Supreme Court has recognized Rule 11 must be limited in that

7  it "must be read in light of concerns that it will spawn satellite litigation and chill vigorous

8  advocacy." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S. Ct. 2447, 2454, 110 L.

9  Ed. 2d 359 (1990).  The Court notes the full sentence reads: "[a]lthough the Rule must be read in

10 light of concerns that it will spawn satellite litigation and chill vigorous advocacy, [] any

11 interpretation must give effect to the Rule's central goal of deterrence."  Id.  Petitioner

12 emphasizes that therefore, sanctions are "reserve[d] [] for the rare and exceptional case where the

13 action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an

14 improper purpose."  Operating Engineers Pension Tr. v. A-C Co., 859 F.2d 1336, 1344 (9th Cir.

15 1988) ("Rule 11 must not be construed so as to conflict with the primary duty of an attorney to

16 represent his or her client zealously [and] [f]orceful representation often requires that an attorney

17 attempt to read a case or an agreement in an innovative though sensible way.").

18       Petitioner focuses heavily on the complaint as filed, as well as the argument that it did not

19 become moot.  Petitioner submits that Rule 11 provides two independent bases for the imposition

20 of sanctions: one if a pleading is frivolous and another if it has been filed for an improper

21 purpose.  Zaldivar v. City of Los Angeles, 780 F.2d 823, 829–30 (9th Cir. 1986); see also

22 Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) ("Either the

23 improper purpose or frivolousness ground is sufficient to sustain a sanction; however, if a district

24 court cites both grounds, we should consider both on appeal because whether the paper is only

25 frivolous or both harassing and frivolous could affect the nature of the sanction or the amount of

26 damages awarded as a result of the sanction.").  The Ninth Circuit explained that Rule 11 should

27 be limited where other rules or laws provide mechanisms to sanction certain conduct, and that

28 the Rule 11 signature is meant to affix responsibility to an individual attorney:

Rule 11 is not a panacea intended to remedy all manner of attorney misconduct occurring before or during the trial of civil cases. It does not repeal or modify existing authority of federal courts to deal with abuses of counsel under 28 U.S.C. § 1927 (1982) (an attorney who, in bad faith, "so multiplies the proceedings in any case" may be assessed excess costs, expenses, and attorneys fees) or under the court's inherent power to discipline attorney misconduct. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980). Nor is it properly used to sanction the inappropriate filing of papers where other rules more directly apply. For example, excessive discovery requests should be dealt with under Rule 26(g) rather than Rule 11, and the filing of inappropriate affidavits in support of, or in opposition to, motions for summary judgment should be considered under Rule 56(g), rather than Rule 11. To apply Rule 11 literally to all papers filed in the case, including those which are the subject of special rules, would risk the denial of the protection afforded by those special rules. *See Chipanno v. Champion International Corp.,* 702 F.2d 827, 831 (9th Cir.1983).

Rule 11 applies to the filing of a "pleading, motion, and other paper" in a civil action. The Rule requires that such a paper be signed. If it is not signed, the paper "shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant." The purpose of the signature, of course, is to fix responsibility upon a specific person for those matters that are the subject of the certificate.

The certificate is addressed to two separate problems, both of which have been identified as major sources of unnecessary litigation delay and expense: first, the problem of frivolous filings; and second, the problem of misusing judicial procedures as a weapon for personal or economic harassment.

Zaldivar, 780 F.2d at 829–30.  Based on this authority, Petitioner thus focuses on Rule 11 as directed at complaints, and submits that when a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002) (quoting Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir.1997)); see also Townsend, 929 F.2d at 1362 ("The word 'frivolous' does not appear anywhere in the text of the Rule; rather, it is a shorthand that this court has used to denote a filing that is both baseless and made without a reasonable and competent inquiry.").

The Court need not need spend much time on this aspect.  The Court does not find the complaint was frivolous when filed, and the Court found above, was not yet moot under the most

1    relevant Ninth Circuit law.  Thus the Court somewhat agrees with Respondent in that Petitioner

2    goes to great length to argue the Hague Petition was filed in good faith, and that the argument is

3    somewhat misdirected.   In this regard, Respondent submits an Eleventh Circuit case for the

4    proposition that there is ongoing duty under Rule 11.  See Attwood v. Singletary, 105 F.3d 610,

5    613 (11th Cir. 1997) ("Attwood contends that he believed the information truthful at the time of

6    filing. Even if this court accepted Attwood's contentions as true, Rule 11 requires Attwood to

7    make reasonable inquiries into the veracity of information filed before the court and to advise the

8    court of any changes. Contrary to Attwood's assertion, his obligations under Rule 11 are not

9    measured solely at the time of filing.").

10          The Court notes that the Ninth Circuit has held that Rule 11 "applies only to the initial

11   signing and imposes no continuing duty on the signer."  MGIC Indem. Corp. v. Moore, 952 F.2d

12   1120, 1121 (9th Cir. 1991).   This holding has recently been utilized in this district.   See

13   Hendricks v. Hunts & Henriques, No. 2:19-CV-02334-KJM-AC, 2020 WL 5944439, at *3 (E.D.

14   Cal. Oct. 7, 2020) ("Rule 11 does not impose a continuing duty past the time an attorney signs a

15   filing." (citing MGIC, 952 F.2d at 1121)).

16          However, it appears the Ninth Circuit's decision was based on an earlier version of Rule

17   11.  The advisory committee note to the 1993 amendment to Rule 11 states: "The rule continues

18   to require litigants to 'stop-and-think' before initially making legal or factual contentions.  It

19   also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for

20   insisting upon a position after it is no longer tenable and by generally providing protection

21   against sanctions if they withdraw or correct contentions after a potential violation is called to

22   their attention."  Fed. R. Civ. P. 11(b)–(c) advisory committee's note to 1993 amendment.  Many

23   courts have recognized this ongoing duty in light of the amendment.  SG Blocks, Inc. v. Hola

24   Cmty. Partners, No. 220CV03432ODWRAOX, 2021 WL 2714596, at *2 (C.D. Cal. July 1,

25   2021) (recognizing MGIC but noting the amendment expanded the responsibilities of the

26   litigants and "it is clear that Rule 11 does impose a continuing duty now."); Avedisian v.

27   Mercedes-Benz USA, LLC, No. CV 12-00936 DMG CWX, 2014 WL 47466, at *4 (C.D. Cal.

28   Jan.       2,       2014)       ("Rule       11       also       subjects       litigants       to       sanctions

1  for insisting upon a position after it is no longer tenable."); Rapp v. Franklin Cnty., No. 4:19-
2  CV-05150-SAB, 2022 WL 636420, at *4 (E.D. Wash. Feb. 18, 2022) (same); Larson v. White
3  Mountain Grp. LLC, No. CV 11-01111-PHX-FJM, 2011 WL 5592911, at *4 (D. Ariz. Nov. 17,
4  2011) (same); Nguyen v. Simpson Strong-Tie Co., Inc., No. 19-CV-07901-TSH, 2020 WL
5  5232564, at *5 (N.D. Cal. Sept. 2, 2020) ("Plaintiffs' refusal to withdraw or meaningfully amend
6  these allegations, which were core to its FAC, was a violation of Rule 11 [as amended].");
7  Martinez v. City of W. Sacramento, No. 216CV02566TLNJDP, 2021 WL 2227830, at *3, 15
8  (E.D. Cal. June 2, 2021) ("Rule 11 also "emphasizes the duty of candor by subjecting litigants to
9  potential sanctions for insisting upon a position after it is no longer tenable[,]' . . . [t]hus, the
10 Court finds imposing a monetary sanction is necessary to deter Mr. Thorn from further refusing
11 to withdraw or correct contentions after a potential violation is called to his attention
12 or insisting upon a position after it is no longer tenable, as such litigation tactics serve only to
13 waste precious public resources.").

14      In briefing, Respondent suggested that arguably the motion to dismiss was an effort to
15 cure their violation within the safe-harbor period, but "counsel signed the documents after
16 receiving Rule 11 notice that the entire action was moot and insisted on its continuation," and
17 "[t]hese actions fall below the certification requirement of Rule 11 and warrant sanctions."
18 (Resp. Mot. 9.)

19      As the Court found above, the petition was not moot under Ninth Circuit law when
20 Petitioner filed the motion to dismiss on May 23, 2022. As discussed below, Petitioner's counsel
21 did not receive the PCS Order until May 18, 2022, and were not aware there was an issue
22 regarding the transfer to Beale AFB in relation to this case until May 12, 2022. Respondent gave
23 notice on May 12, 2022, that Respondent would seek sanctions under Rule 11 and Section 1927
24 to the extent Petitioner continued the case, and Respondent served the Rule 11 sanctions motion
25 on May 17, 2022. (Resp. Mot. 4; Jones Decl. ¶¶ 7-8.) Petitioner filed his motion to dismiss on
26 May 23, 2022. (ECF No. 70.)

27      Even utilizing May 12, 2022, the motion to dismiss was filed within twenty-one days of
28 the service of the Rule 11 motion. Given these facts, the cautionary language in caselaw

1  concerning sanctions under Rule 11, the safe-harbor period, and caselaw directing courts to

2  utilize more on-point sanction authority when available, the Court finds Rule 11 sanctions are

3  not warranted against Petitioner's counsel, and shall deny the Respondent's motion to the extent

4  it seeks Rule 11 sanctions.  <u>Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC</u>, 339

5  F.3d 1146, 1150 (9th Cir. 2003) ("The safe harbor provision gives an attorney the opportunity to

6  withdraw or correct a challenged filing by requiring a party filing a Rule 11 motion to serve the

7  motion 21 days before filing the motion."); <u>Lanuza v. United States</u>, No. 2:14-CV-01641-BJR,

8  2019 WL 5576012, at *2 (W.D. Wash. Oct. 29, 2019) (Rule 11's safe harbor provision "requires

9  giving the opposing party 21 days first to 'withdraw or otherwise correct' the offending conduct;

10  any conduct before the 'safe harbor' notice is not subject to Rule 11." (citing <u>Holgate v.</u>

11  <u>Baldwin</u>, 425 F.3d 671, 678 (9th Cir. 2005))); <u>Crawford v. Japan Airlines</u>, No. CIV. 03-00451

12  LEK, 2013 WL 2420715, at *7 (D. Haw. May 31, 2013) ("This provision is so strictly enforced

13  that sanctions are not to be awarded when the moving party fails to comply, even if the

14  underlying filing is frivolous."); <u>Cooter</u>, 496 U.S. at 393 ("Rule must be read in light of concerns

15  that it will spawn satellite litigation and chill vigorous advocacy."); <u>Operating Engineers</u>, 859

16  F.2d at 1344 ("Rule 11 must not be construed so as to conflict with the primary duty of an

17  attorney to represent his or her client zealously [and] [f]orceful representation often requires that

18  an attorney attempt to read a case or an agreement in an innovative though sensible way.").

19        The Court proceeds to consider whether sanctions are appropriate under Section 1927.

20        2.      The Court Grants Sanctions under 28 U.S.C. § 1927

21        "Any attorney or other person admitted to conduct cases in any court of the United States

22  or any Territory thereof who so multiplies the proceedings in any case unreasonably and

23  vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

24  attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Section 1927,

25  because it authorizes sanctions only for multiplication of proceedings, "applies only to

26  unnecessary filings and tactics once a lawsuit has begun."  <u>In re Keegan Mgmt. Co., Sec. Litig.</u>,

27  78 F.3d 431, 435 (9th Cir. 1996).

28        "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad

1   faith."   Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1995) (quoting New Alaska Dev. Corp. v.

2   Guetschow, 869 F.2d 1298, 1306 (9th Cir.1989)).   "Bad faith is present when an attorney

3   knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose

4   of harassing an opponent."   Id.   Thus, under Section 1927, "[f]or sanctions to apply, if a filing is

5   submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to

6   harass; [t]hus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings

7   may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned."   In

8   re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996) (district court could not

9   sanction under Section 1927 where "[i]t found that appellants acted recklessly, but did not make

10  a finding that they had acted with subjective bad faith or with an intent to harass.").

11        Respondent argues that after learning of the reassignment, the continuation of this case

12  and various hearings by Petitioner's attorneys was multiplying the proceeding in an unreasonable

13  and vexatious manner.   Respondent argues Petitioner requested to appear at the Convention

14  Evidentiary Hearing by video, when he knew he would be permanently returning to the United

15  States four weeks after the hearing, and yet his attorneys proceeded to force Respondent to

16  prepare all documents and papers necessary for the evidentiary hearing, and insisted on the

17  hearing moving forward after the attorneys knew of the Petitioner's PCS Order.   Respondent

18  argues even if counsel had colorable arguments, the frivolous nature of the claim once Michael

19  knew of his assignment in California make the conduct in bad faith under Section 1927.

20        Petitioner argues his claim was not frivolous, as an argument is frivolous if its resolution

21  is obvious or the argument is wholly without merit.   See In re Nat'l Mass Media Telecomm. Sys.,

22  Inc., 152 F.3d 1178, 1181 (9th Cir. 1998) ("Although we cannot award sanctions under Rule 11,

23  we have discretion to award damages for a frivolous appeal under Fed. R.App. P. 38, 28 U.S.C. §

24  1912, or 28 U.S.C. § 1927 . . . [and] [a]n appeal is frivolous within the meaning of that rule when

25  the result is obvious or the appellant's arguments of error are wholly without merit.") (quotation

26  marks and citation omitted).   Petitioner also argues Respondent has failed to support purported

27  "bad faith" findings with any evidence that could demonstrate Petitioner's actions in attempting

28  to reunite with his children constituted bad faith.

1    Petitioner directs the Court to <u>Morgan v. Cnty. of Yolo</u>, 277 F. App'x 735, 736 (9th Cir.

2  2008), where the Ninth Circuit held sanctions were not warranted against the defendant's

3  attorney where the district court did not make any finding that the defendant had acted in

4  "subjective bad faith" or with a "knowing" or "reckless" state of mind.

> In support of sanctions, the district court found that Webster had
> "refused to dismiss [his client's] action ... despite defense counsel's
> letter ... requesting such dismissal," and that he "simply had no
> legally justifiable reason for continuing to maintain this lawsuit
> once the County unequivocally abandoned any attempt to enforce
> the Employment Agreement that formed the basis for the present
> action." *Morgan v. County of Yolo*, Slip Copy, No. 2:03–cv–2228–
> MCE–JFM, 2006 WL 2692872, at *2 (E.D.Cal. Sep.18, 2006).
>
> The court did not, however, make any finding that Webster had
> acted in "subjective bad faith" or with a "knowing" or "reckless"
> state of mind. Although Webster's effort to recover as damages in
> the section 1983 action the fees and costs incurred by Morgan in
> defending the state court action failed, and properly so, that result
> was not so obvious in advance that it can be inferred that Webster
> knowingly or recklessly pursued a futile claim. Webster appears to
> have had nothing to gain by advancing frivolous claims, and
> nothing in the record suggests that he did not sincerely believe he
> was advancing colorable claims.

15 <u>Morgan v. Cnty. of Yolo</u>, 277 F. App'x 735, 736 (9th Cir. 2008) (unpublished).   Petitioner

16 argues that like there, it cannot be inferred that Petitioner acted "knowingly" or "recklessly" in

17 maintaining his Hague Petition, as the result of this litigation was in no way obvious; Petitioner

18 had every intention of remaining in Germany for several years or possibly longer; that he would

19 not have explored the possibility of relocating to Beale AFB had Respondent not wrongfully

20 retained his children there (Michael Krause Decl. Supp. Mot. Dismiss ¶ 7, ECF No. 70-1 at 1);

21 Petitioner, not wanting to risk being separated from his children any longer, abruptly had to

22 make a decision on May 12, 2022, upon the issuance of his relocation reassignment to Beale

23 AFB (<u>id.</u> at ¶ 8); and that Petitioner maintained his Hague Petition while contemplating moving

24 to California to be with his children in order to give himself a chance to see them in the event he

25 lost this case.  (Pet. Opp'n 12-13.)  Petitioner submits that it would therefore be absurd for this

26 Court to hold a father's efforts to ensure his ability to maintain a relationship with his children,

27 during a time of extreme uncertainty and under a tremendous amount of pressure, to constitute

28 the bad faith conduct contemplated by Section 1927.

1    A party can maintain a meritorious lawsuit for an improper reason.  Trulis, 107 F.3d at

2    694 ("Bad faith [under Section 1927] is present when an attorney knowingly or recklessly raises

3    a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent."

4    (quoting New Alaska, 869 F.2d at 1306)).  Thus, a non-frivolous lawsuit may be maintained for

5    the purpose of harassment.

6        As for the time period before May 12, 2022, the Court finds in favor of Petitioner.  As for

7    that preceding period, Petitioner emphasizes that while one may have some input as to where he

8    or she can be assigned, assignments within the Airforce are never guaranteed, and although

9    Petitioner may have discussed the process of obtaining a reassignment to Beale AFB, Petitioner

10   "did not know for certain he would be assigned there until he received such orders on May 12,

11   2022."  (Pet. Opp'n 2, ECF No. 81 at 2 ("[P]rior to the rendering of the Order on May 12, 2022,

12   Petitioner did not know for certain that he was going to receive a reassignment order to Beale

13   AFB.").)  Regardless of whether Petitioner had goals of obtaining a Director of Operations

14   position before this action generally, the Court finds merit in Petitioner's arguments that he

15   sought relocation as an option at least in part in reaction to the events surrounding this case, and

16   perhaps as an option in case he proved unsuccessful in this action.  After hearing testimony at the

17   Sanctions Evidentiary Hearing from Petitioner, and Lt. Col. Brown, the Court finds this position

18   of Petitioner to be supported and credible.  Given there is sufficient evidence that Petitioner had

19   a legitimate basis to file this Convention proceeding based on the Respondent's retention of the

20   children in California, the Court finds insufficient evidence demonstrating Petitioner's counsel

21   knew of a confirmed reassignment, or that such knowledge in January or February of 2022 of

22   settlement discussions involving a reassignment, would equate to Petitioner improperly

23   maintaining this action.

24       While not strictly moot under Ninth Circuit law as discussed above, the Court finds the

25   more pertinent and pointed question is whether sanctions are appropriate for Petitioner declining

26   to agree to a continuance and proceeding into the Convention Evidentiary Hearing, at some point

27   after Petitioner obtained the PCS Order issued on May 12, 2022.

28       First, the Court does not find the Petitioner's statement that he further still had options at

45

1    this point (after May 12, 2022), such as requesting to have his re-assignment order reversed, or

2    even quit the Air Force, while perhaps technically *possible*, not plausible, credible, or persuasive.

3    In consideration of all the testimony at the Sanctions Evidentiary Hearing, the Court does not

4    consider such alternatives played a significant role in Petitioner's decision to proceed forward

5    into the Convention Evidentiary Hearing.   However, despite this determination as to the

6    Petitioner's "options" in his own mind, the Court does not find conduct sanctionable until the

7    Petitioner and counsel objected to the continuance at the May 18, 2022, hearing held on

8    Petitioner's motion *in limine*, and Respondent's motion to continue the Convention Evidentiary

9    Hearing.   The Court accepts that "Petitioner's counsel did not receive Petitioner's reassignment

10   orders until May 18, 2022 and were not aware that it was a consideration until on or around May

11   13, 2022."   (Pet. Opp'n 3; Decl. Savannah C. Wadsworth Opp'n Mot. Sanctions ("Wadsworth

12   Opp'n Decl.") ¶¶ 3-4, ECF No. 81-2 at 1[2]; Decl. Richard Min Opp'n Mot. Sanctions ¶¶ 2-4, ECF

13   No. 81-1 at 1.)   In other words, until the matter was presented at the May 18, 2022 hearing, and

14   Petitioner and counsel declined to agree to a continuance, sanctions were not warranted.

15          The Court finds the hearing held on May 18, 2022, to be the critical point as to

16   sanctionable conduct.   On May 18, 2022, Petitioner took the position of no continuance.   In the

17   motion to dismiss filed May 23, 2022, Petitioner proffered that he "no longer desires for his

18   Children to be sent back to Germany and will instead seek the appropriate custody relief in the

19   appropriate courts in the United States."   (ECF No. 70 at 1-2.)   Based on the Petitioner's

20   testimony at the Sanctions Evidentiary Hearing as to the time period between May 12, 2022, the

21   May 18, 2022 hearing, and when the motion to dismiss was filed on May 23, 2022, the Court

22   finds Petitioner and counsel proceeded in bad faith by refusing to continue the Convention

23   Evidentiary Hearing.   Trulis, 107 F.3d at 694 ("Bad faith [under Section 1927] is present when

24   an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for

25

26   _____
     [2] Ms. Wadsworth declares that "[n]either I nor anyone in my firm had knowledge of the fact that a reassignment
     order for Michael Krause was impending or actively being pursued until on or around May 13, 2022," and that

27   "[s]ettlement discussions between the parties in early 2022 were not being handled by my firm and upon information
     and belief, neither my firm nor Respondent's lawyers in this instant Hague proceeding were directly involved in said
     discussions."   (Wadsworth Opp'n Decl. ¶¶ 3-4.)   The Court finds these statements credible and supported by

28   testimony given by Ms. Wadsworth at the Sanctions Evidentiary Hearing.

1    the purpose of harassing an opponent." (quoting New Alaska, 869 F.2d at 1306)).

2        The Court denied the continuation of the Convention Evidentiary Hearing based on

3    Petitioner's adamant posture that it move forward, yet Petitioner and counsel were put on a

4    preliminary notice of the issue on May 12, 2022, through Respondent, then again on May 17,

5    2022, when Respondent served the Rule 11 motion and filed the motion to continue, and then

6    again when all parties were before the Court and the issues concerning the viability of any

7    remedy by the time a court decision was rendered.  The Court finds no good faith reason why the

8    Petitioner and his counsel's calculations or reasoning should have changed between the time of

9    the May 18, 2022 hearing, and the filing of the motion to dismiss on May 23, 2022.  Therefore,

10   as of that point, the Court finds that despite Petitioner knowing then that the hearing would never

11   proceed, and that proceeding would require the Respondent to prepare and expend significant

12   resources, as well as the Court to expend time and resources, and denying other litigants the

13   opportunity to have their matters heard, the Petitioner maintained his objection to a continuance.[3]

14       Accordingly, the Court finds sanctions are proper under 28 U.S.C. § 1927 for multiplying

15   the proceedings in the case unreasonably and vexatiously.  The Court finds sanctions are

16   appropriately levied for the attorneys' fees, costs, and expenses, incurred after the May 18, 2022,

17   hearing was held, including for those incurred in relation to the parties' sanctions motions.

18       As discussed in the following section, the Court also find sanctions proper under the

19   Court's inherent authority as an alternative or additional basis.  See F.J. Hanshaw Enterprises,

20   244 F.3d at 1136-37 ("While it is preferable that courts utilize the range of federal rules and

21   statutes dealing with misconduct and abuse of the judicial system, courts may rely upon their

22   inherent powers to sanction bad faith conduct even where such statutes and rules are in place.").

23

24   [3]  The Court is extremely impacted as one of the busiest district courts in the nation.  In addition to impacting the
     scheduling of various civil matters, such as motions, settlement conferences, scheduling conferences, and discovery
25   disputes, on the dates of May 25, through May 27, 2022, the Court had a full duty criminal calendar, as well as
     grand jury returns.  Therefore, the Court's ability to hear other litigant's matters was severely limited during that
26   time period.  See Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure shall be "construed, administered, and
     employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and
     proceeding."); Chambers, 501 U.S. at 43 ("These [inherent] powers are 'governed not by rule or statute but by the
27   control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious
     disposition of cases.' " (quoting Link v. Wabash R. Co., 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389, 8
28   L.Ed.2d 734 (1962))).

1      3.      <u>Inherent Authority</u>

2          To impose sanctions under the Court's inherent authority, there must be a specific finding

3    of bad faith.  <u>In re Keegan</u>, 78 F.3d at 436 ("While recklessness may be the standard under §

4    1927 . . . it is an insufficient basis for sanctions under a court's inherent power [and] [i]nstead,

5    counsel's conduct must 'constitute[ ] or [be] tantamount to bad faith.' " (quoting <u>Roadway Exp.</u>,

6    447 U.S. at 767)).   As the Court found in the preceding section, the refusal to continue the

7    Convention Evidentiary Hearing despite the arguments and facts presented at the May 18, 2022

8    hearing, to only then move to dismiss the action on May 23, 2022, constitutes bad faith in light

9    of the totality of the circumstances leading up to the hearing, and in light of the evidence and

10   testimony presented at the Sanctions Evidentiary Hearing.

11         "[O]ne permissible sanction is an 'assessment of attorney's fees'—an order, like the one

12   issued here, instructing a party that has acted in bad faith to reimburse legal fees and costs

13   incurred by the other side."  <u>Goodyear Tire & Rubber Co. v. Haeger</u>, 581 U.S. 101, 107, 137 S.

14   Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017) (quoting <u>Chambers</u>, 501 U.S. at 45).  The Supreme

15   Court "has made clear that such a sanction, when imposed pursuant to civil procedures, must be

16   compensatory rather than punitive in nature."  <u>Goodyear</u>, 581 U.S. at 107 (citing <u>Mine Workers</u>

17   <u>v. Bagwell</u>, 512 U.S. 821, 826–830, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)).  Thus, [i]n other

18   words, the fee award may go no further than to redress the wronged party 'for losses sustained';

19   it may not impose an additional amount as punishment for the sanctioned party's misbehavior."

20   <u>Id.</u> (quoting <u>Bagwell</u>, 512 U.S. at 829).  "To level that kind of separate penalty, a court would

21   need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a

22   reasonable doubt' standard of proof."  <u>Id.</u> (quoting <u>Bagwell</u>, 512 U.S. at 826, 832-34, 838-39).

23         Therefore, the Court confines the fees and expenses award to those incurred after the

24   May 18, 2022 hearing.  <u>See</u> <u>Goodyear</u>, 581 U.S. at 108–09 ("That means, pretty much by

25   definition, that the court can shift only those attorney's fees incurred because of the misconduct

26   at issue . . .  [a] fee award is so calibrated if it covers the legal bills that the litigation abuse

27   occasioned.").

28   / / /

### F.  The Court Recommends Granting Petitioner's Motion to Dismiss

As noted above, on May 23, 2022, Petitioner filed a motion to dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(2), or in the alternative, continuing the evidentiary hearing schedule until this proceeding is dismissed.  (ECF No. 70.)  The filing indicates that Petitioner "has decided to relocate to California upon receiving an Order for reassignment to Beale [AFB] on or about May 12, 2022, even though his future does not legally moot this proceeding at this time.  Mr. Krause, however, no longer desires for his Children to be sent back to Germany and will instead seek the appropriate custody relief in the appropriate courts in the United States."  (Id. at 1-2.)

Rule 41(a)(2) provides that: "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

On May 24, 2022, Respondent filed a response to the motion to dismiss.  (ECF No. 71.) Respondent directs the Court to the Ninth Circuit's statement that "defendants' interests can be protected by conditioning the [41(a)(2)] dismissal without prejudice upon the payment of appropriate costs and attorney fees."  Westlands Water Dist. v. United States, 100 F.3d 94, 97 (9th Cir. 1996).  While the language specifies where an action is dismissed without prejudice, Respondent takes the position that the Court condition the dismissal on the award of attorneys' fees, and also that the action should be dismissed *with* prejudice because of the reassignment.

The Court finds the mechanism described in Westlands applies to dismissals without prejudice as that protects the defendant from successive litigation.  The Court does not find it appropriate, or necessary, to extend the holding in Westlands to a dismissal with prejudice, when there are other mechanisms for awarding attorneys' fees for the conduct complained of.  See F.J. Hanshaw Enterprises, 244 F.3d at 1136-37 ("[I]t is preferable that courts utilize the range of federal rules and statutes dealing with misconduct and abuse of the judicial system.").

Because the Court issues this order adjudicating the cross-motions for sanctions, and awards attorneys' fees for the time period it finds appropriate to Respondent, the Court recommends granting Petitioner's motion to dismiss this action, and that this action be dismissed

1  with prejudice.   The Court recommends retaining ancillary jurisdiction to adjudicate any

2  outstanding issues regarding the attorneys' fee award.

**V.**

**ORDER AND RECOMMENDATION**

For all of the above explained reasons, **IT IS HEREBY ORDERED** that:

1.  The Petitioner's motion for sanctions (ECF No. 78), is DENIED;

2.  The Respondent's motion for sanctions (ECF No. 79), is DENIED to the extent it seeks sanctions under Federal Rule of Civil Procedure 11, and GRANTED as to fees and expenses incurred after the May 18, 2022 hearing, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority;

3.  The request for judicial notice filed March 15, 2022 (ECF No. 34), is WITHDRAWN as moot;

4.  The request for judicial notice filed November 2, 2022 (ECF No. 104), is GRANTED; and

5.  If the parties do not stipulate to an amount of reasonable attorneys' fees and costs, Respondent shall file a motion for the award of reasonable attorney fees within thirty (30) days of entry of this order and any opposition shall be filed within 14 days after the motion for attorney fees is filed.

For all of the above explained reasons, **IT IS RECOMMENDED** that:

1.  Petitioner's motion to dismiss (ECF No. 70), be GRANTED; and

2.  This action be dismissed with prejudice, with a retention of jurisdiction to adjudicate ancillary issues concerning the sanctions and attorneys' fees.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.   Within **fourteen (14) days** of service of these recommendations, any party may file written objections to the findings and recommendations with the Court.   Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The District Judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §

636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 16, 2023**

UNITED STATES MAGISTRATE JUDGE

Richard Min, Esq. (admitted *pro hac vice*)
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, NY 10170
Telephone: (212) 681-6400
Facsimile: (212) 681-6999

Michael Kalanta, Esq. SBN 273829
The Kalanta Law Office
Centre Plaza Office Tower
1150 Ninth Street, Suite 1410
Modesto, California 95354
Telephone: (209) 579-7732
Facsimile: (209) 579-7231

Patrick R. Delahunty (CA Bar No. 257439)
pdelahunty@delawllp.com
William J. Edelman (CA Bar No. 285177)
wedelman@delawllp.com
Delahunty & Edelman LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel:    (415) 891-6210
Fax:    (415) 891-6256

Attorneys for Petitioner:
MICHAEL KRAUSE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KRAUSE,<br><br>Petitioner,<br><br>v.<br><br>TARA KRAUSE,<br><br>Respondent. | Case No.:  1:21-cv-01706-JLT-SAB<br><br>**PETITIONER'S REQUEST FOR RECONSIDERATION BY THE DISTRICT COURT OF THE MAGISTRATE JUDGE'S RULING** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.   RELEVANT BACKGROUND ...................................................................... 2

  A.    Hearing Testimony.................................................................................. 5

  B.    The Sanctions Order .............................................................................. 6

III.  LEGAL STANDARDS ................................................................................. 7

IV.   ARGUMENT ................................................................................................. 9

  A.    Magistrate Judge Boone Clearly Erred in His Predicate Factual Findings................... 9

  B.    Magistrate Judge Boone's Bad Faith Finding Was Contrary to Law. ........................ 11

  C.    Sanctions Against Counsel Are Particularly Inappropriate. ........................................ 14

  D.    The Magistrate Judge's Sanctions Order is Procedurally Flawed. ............................. 16

V.    CONCLUSION ............................................................................................. 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ................................................................................................8

*Computer Econ., Inc. v. Gartner Group, Inc.*,
    50 F. Supp. 2d 980 (S.D. Cal. 1999) ....................................................................9

*Cowden v. Chrysler Corp.*,
    116 F.3d 483 (9th Cir. 1997) ...............................................................................8

*Franco v. Dow Chem. Co.*,
    611 F.3d 1027 (9th Cir. 2010) .............................................................................8

*Kaass Law v. Wells Fargo Bank, N.A.*,
    799 F.3d 1290 (9th Cir. 2015) ...........................................................................16

*Lahiri v. Universal Music & Video Distribution Corp.*,
    606 F.3d 1216 (9th Cir. 2010) ........................................................................2, 7

*Maisonville v. F2 America, Inc.*,
    902 F.2d 746 (9th Cir. 1990) ...............................................................................9

*Mayorga v. Ronaldo*,
    No. 219-CV-00168J, 2023 WL 2020075 (D. Nev. Feb. 14, 2023) .................7, 15

*McClintock v. Cooper*,
    No. 218CV0560JAMKJNP, 2021 WL 4741898 (E.D. Cal. Oct. 12, 2021) ............8

*Mendez v. County of San Bernardino*,
    540 F.3d 1109 (9th 2008)...............................................................................9, 15

*Navarro v. Gen. Nutrition Corp.*,
    No. C-03-0603SBAEMC, 2004 WL 2648373 (N.D. Cal. Nov. 19, 2004)............13

*Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*,
    210 F.3d 1112 (9th Cir. 2000) ...........................................................................12

*Philips N. Am. LLC v. Kpi Healthcare, Inc.*,
    No. CV 19-1765, 2021 WL 3558778 (C.D. Cal. Apr. 29, 2021).....................7, 15

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
    115 F.3d 644 (9th Cir.1997) ...............................................................................9

*S.E.C. v. Alternate Energy Holdings, Inc.*,
    No. 1:10-CV-00621, 2014 WL 2515710 (D. Idaho May 13, 2014) ......................4

*Pet.'s Req. for Reconsider. MJ Ruling*
                                        *No. 1:21-cv-01706-JLT-SAB*

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
   No. CV 18-9536-MWF (ASX), 2021 WL 681127 (C.D. Cal. Feb. 5, 2021) ....................... 12

*United States v. Coffey*,
   233 F.2d 41 (9th Cir. 1956) ..................................................................................... 10

*United States v. Stoneberger*,
   805 F.2d 1391 (9th Cir. 1986) .................................................................................... 8

*United States v. Yijun Zhou*,
   838 F.3d 1007 (9th Cir. 2016) .................................................................................. 12

**Statutes**

28 U.S.C. § 1927 ...................................................................................................... 8, 16

Cal. Bus. & Prof. Code § 6068(o)(3) ............................................................................ 16

Hague Convention on the Civil Aspects of International Child Abduction ................................ 2

International Child Abduction Remedies Act, 22 U.S. § 9001, *et seq.* ................................... 2

**Rules**

Federal Rule of Civil Procedure 72(a) ............................................................................ 9

N.Y. Rule of Prof'l Conduct 1.2 ................................................................................... 14

1    NOTICE:  Petitioner, Michael Krause, by and through his attorneys, hereby submits

2    this request for reconsideration by the District Court of the portion of Magistrate Judge

3    Stanley Boone's order and recommendations dated March 16, 2023 granting Respondent's

4    motion for sanctions.  [ECF No. 109 (the "Order") at 42-48, 50].  Petitioner's counsel emailed

5    Respondent's counsel on March 28, 2023 to set up a meet and confer call regarding these

6    objections.  Respondent's counsel agreed to a call set for March 29, 2023, but did not attend,

7    later citing conflicts.  Additional emails were exchanged but the parties were unable to reach

8    any agreement.  *See* Declaration of Richard Min ("Min Decl.") ¶ 14.

9    ## I.   INTRODUCTION

10    The Magistrate Judge clearly erred and made conclusions contrary to law in granting

11    Respondent's motion for sanctions.  The Magistrate found that Petitioner and his counsel

12    should be liable for sanctions because on May 18, 2023, they did not consent to a continuance

13    (on one days' notice) before moving to dismiss the pending Petition five days later on May 23,

14    2023.  No evidence supports the finding that Petitioner and Petitioner's counsel acted in bad

15    faith.  Further, objective evidence establishes that there was no bad faith or intention to harass

16    Respondent.  Petitioner's counsel prosecuted a live case until instructed to dismiss the Petition

17    by their client within the context of emotionally fraught situation where Petitioner was

18    justifiably conflicted about the options most likely to result in him reuniting with his children

19    in a timely manner in the country he preferred.  That is not bad faith.

20    As detailed below, the sanctions order was based on the Magistrate's conclusion that

21    Mr. Krause did not obtain any new information as he continued weighing significant life and

22    career options between May 18, 2022 and May 23, 2022, at which point he decided to dismiss

23    the Petition: "The Court finds no good faith reason why the Petitioner and his counsel's

24    calculations or reasoning should have changed between the time of the May 18, 2022 hearing,

25    and the filing of the motion to dismiss on May 23, 2022."  [Order at 47.]  That criticism,

26    however, boils down to finding Petitioner and counsel negligent in not making a decision as

27    fast as the Magistrate Judge believed was appropriate.  Even if that finding were accepted,

28    which it should not be because as explained below it was clearly erroneous based on the

1    record, it does not satisfy the high "bad faith" standard.  The Magistrate Judge's conclusion

2    was therefore contrary to law.  In addition, the Magistrate Judge's conclusions relied on mere

3    skepticism about uncontroverted testimony from two witnesses supporting Petitioner's

4    position that he remained conflicted about his options during that five-day period.[1]  Because

5    the Ninth Circuit has thus far only affirmed sanctions orders based on a finding of bad faith

6    meeting the high  "clear and convincing" evidence standard, *Lahiri v. Universal Music &*

7    *Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010), the Magistrate Judge's factual

8    findings were clearly erroneous and the Order's conclusion of bad faith was contrary to law.

9                        **II.              RELEVANT BACKGROUND**

10           Petitioner Michael Krause is a Lt. Colonel in the U.S. Airforce.  Prior to the filing of

11   the Petition, he was stationed at Rammstein Air Force Base in Germany, where he lived with

12   Respondent and two children.  The underlying Petition, filed on November 30, 2021, was

13   brought pursuant to the Hague Convention on the Civil Aspects of International Child

14   Abduction ("Hague Convention") and the International Child Abduction Remedies Act

15   ("ICARA"), 22 U.S. § 9001, *et seq.,* after Respondent unilaterally relocated the parties' two

16   children from Germany to California. [ECF No. 1].

17           It is the goal of a Hague Convention case to be resolved within six weeks.  *See* Hague

18   Convention, Art. 11. As this case extended well beyond that time frame, and uncertainty about

19   the ultimate outcome mounted, Petitioner began considering backup options.[2] [ECF No. 81-3

20   at ¶¶ 5-6].  In February 2022 Mr. Krause's Air Force superiors began considering moving him

21   to Beale Air Force Base in California.  Tr. 39:5-41:24.  Petitioner started the process of

22   potentially transferring to Beale as a contingency plan if he did not prevail in the Hague case

23

24   _____

25   [1] Notably, during this period Petitioner was on active duty in Germany supporting the military's
     efforts relating to Ukrainian hostilities, and his work commitments required much of his
26   attention during this time as well.  Tr. of Nov. 3, 2022 Evid. Hr'g ("Tr."), attached as Exhibit E
     to the Declaration of Richard Min ("Min Decl.") at 96:23-97:7, 120:13-20, 137:13-16.
27   [2] Magistrate Judge Boone noted that "Petitioner has adamantly requested this case be expedited,
     in line with the goals of the Convention."  [ECF No. 68 at 6].  Petitioner has steadfastly sought
28   expeditious resolution of this matter because of how long he had been separated from his children
     and in order to consider his future options regarding deployment so that he could remain in close
     proximity to his children, which was his priority.

1   and the children were not returned to Germany.  Tr.107:8-12.  On or about May 12, 2022, the

2   Air Force issued the order to report to Beale. [Order at 20-21].

3         On May 11, 2022, Respondent became aware that Mr. Krause may be transferred to

4   California. [ECF No. 79-2 at ¶ 6].  Mr. Krause's counsel was unaware that Mr. Krause may be

5   transferred to Beale until on or about May 12, 2022.  [ECF No. 109 at 41].  On May 17, 2022,

6   Respondent filed a motion to continue the upcoming evidentiary hearing on the merits of the

7   Hague Petition scheduled for May 25, 2022, in order to obtain discovery on Mr. Krause's

8   transfer.  [ECF No. 50].  On Wednesday, May 18, 2022, Mr. Krause provided a copy of his

9   orders to his counsel, which were turned over to Respondent the same day.  [ECF No. 68 at 7;

10  ECF No. 109 at 41].  Later that day there was a court appearance, during which the Court

11  heard oral argument on Respondent's motion to continue.  Mr. Krause objected to the

12  continuance through counsel, and the Court denied Respondent's continuance motion. [ECF

13  No. 68].

14        In the Order denying the continuance, Magistrate Judge Boone noted that "the instant

15  motion [for a continuance] was filed the evening before the hearing" and "it was never

16  formally set for hearing by the filing party, nor filed with an application to hear the motion on

17  shortened time."  [ECF No. 68 at 2].  He further went on to state that:

18        The motion to continue the evidentiary hearing was filed on May 17, 2022, eight
19        days before the evidentiary hearing, and only the day before the parties' respective
          witness lists, exhibit lists, and final trial briefs were due. Petitioner would not have
20        even had time to properly oppose this motion while concurrently in a state of
          unclarity on whether these proceedings were to move forward on the day the
21        majority of the relevant pretrial filings were due.

22        [ECF No. 68 at 5].

23        Magistrate Judge Boone also noted that "[a]t the hearing, the Court found it significant

24  that the Petitioner, as the party moving the litigation forward, emphasized from his perspective

25  that he was put in this position by the alleged wrongful retention of the children by

26  Respondent, and the parties were nearing the precipice of the Convention Evidentiary Hearing.

27  Petitioner maintained they had a good faith argument that the order of reassignment did not

28  moot the Hague Convention action."

1    Consistent with his opposition to the continuance, Petitioner's preparation for the

2    upcoming trial continued in earnest after May 18, 2022.  Counsel continued preparing

3    witnesses and exhibits until May 20, 2022 (a Friday), as reflected in attorney invoices

4    submitted to Petitioner (which Petitioner paid).  [Min Decl., Ex. A].[3] After discussions with

5    Petitioner on Saturday, May 21, 2022, and on Sunday, May 22, 2022, Petitioner's counsel

6    contacted Respondent's counsel at approximately 8:59 am ET advising that Petitioner would

7    be seeking to withdraw his action. [Min Decl., Ex. C].  On Monday, May 23, 2022, Petitioner

8    filed a motion to dismiss his Petition.  [ECF No. 70].  On that same day, Monday, Petitioner's

9    counsel contacted the witnesses they were planning to call for the upcoming trial to alert them

10   they were no longer needed.  [Min Decl., Ex. D].

11   Respondent moved for sanctions on the theory that Mr. Krause prosecuted the Hague

12   case knowing that he was going to move to California either during or shortly after its

13   conclusion. [ECF No. 78].  Petitioner opposed Respondent's request for sanctions.  The

14   testimony at the ensuing evidentiary hearing established that at all times until Petitioner moved

15   to dismiss it, the Hague case presented a live controversy he intended to pursue to conclusion.

16   Tr. 118:23-120:6.  As to the specific issue of opposing the motion to continue on May 18, Mr.

17   Krause explained that when faced with the continuance request on short notice, he faced a

18   difficult choice between two legitimate options: (i) proceeding with the Petition and

19   preserving the best possible outcome of bringing his children back to Germany despite

20   uncertainty in the timeline of obtaining a favorable ruling and addressing any appeals, or (ii)

21   abandoning the Petition and moving to California to be closer to his children sooner under less

22   favorable circumstances.  *Id.*; Tr. 138:2-140:6.  He initially decided to proceed with the

23   

24   [3] *S.E.C. v. Alternate Energy Holdings, Inc.*, No. 1:10-CV-00621, 2014 WL 2515710, at *16 (D.
Idaho May 13, 2014). (reviewing new evidence in FRCP 72(a) objection after finding new

25   material relevant to its determination). Considering this evidence would be appropriate here
because it is highly probative as to Petitioner' and counsel's good faith during the relevant time

26   period.  Moreover, Respondent's motion for sanctions was predicated largely upon the argument
that the entire case was frivolous and/or moot, not that Petitioner specifically did not intend to

27   proceed to trial on May 18, 2022, which is what the Magistrate Judge determined.  The relevance
of this exhibit and other exhibits referenced in Mr. Min's declaration were only obvious after the

28   Magistrate Judge's order so heavily relied upon that narrow finding.

1    Petition to avoid closing the door on that option, but ultimately decided to dismiss the Petition

2    five days later on May 23, 2023 and relocate to California because that option presented the

3    certainty of being closer to his children sooner.  Tr.119:18-120:6.

4            The Magistrate Judge held an evidentiary hearing on the motion for sanctions on

5    November 3, 2022.[4]

6            **A.  Hearing Testimony**

7            During the hearing, the Magistrate stated that "[t]he key issue in the Court's mind is

8    was there a point in time that the Petitioner did not intend to proceed with this case that

9    resulted in the Respondent having to incur expenses, irrespective of the Court's time, but

10   that's the key to me."  Tr. 25:17-21.

11           Mr. Krause testified as follows:

12                • That his options were fluid based on the outcome of the case. Tr. 97:8-22.

13                • That he had the option to modify his orders to transfer to Beale and remain in

14                  Germany if he prevailed. Tr. 97:8-22; 135:5-14.

15                • That if he had prevailed, his intention was to have the children returned to

16                  Germany and live there indefinitely. Tr. 119:1-8.

17                • That he made the decision to withdraw the case based upon the impending

18                  timeline and unlikelihood that there would be imminent resolution to the case. Tr.

19                  119:18-120:6.

20                • That he was only confident that he would follow through on transferring to Beale

21                  once the case was withdrawn. Tr. 94:2-5.

22           Toward the tail end of Mr. Krause's testimony, Magistrate Judge Boone took over

23   questioning and asked Mr. Krause a series of questions about his military training and whether

24   it involved risk assessment.  Tr. 141:13-14, 144:17.

25           Mr. Krause's superior officer, Mikita Brown, was subpoenaed by Respondent's

26   counsel and testified at the hearing.  She corroborated that Mr. Krause's orders could be

27   modified based on his particular needs.  Tr. 68:3-25; Tr. 75:6-11.  Thus, critically, both Mr.

28   _____
     [4] The evidentiary hearing was also relevant to Petitioner's cross-motion for sanctions, which is
     not at issue in this brief.

1   Krause and his superior officer testified that as of May 18, the transfer order was not final as a

2   practical matter and there was a realistic possibility of Mr. Krause being able to stay in

3   Germany if he prevailed in the Hague case before reporting to Beale on July 1 pursuant to the

4   transfer order. Tr. 97:13-22.  That testimony was uncontroverted.

5               **B.  The Sanctions Order**

6          On March 16, 2023, Magistrate Judge Boone granted Respondent's motion for

7   sanctions pursuant to 28 U.S.C. § 1927 and, in the alternative, the Court's inherent authority.[5]

8   The Magistrate credited Petitioner's testimony in significant part, stating that "the Court finds

9   merit in Petitioner's arguments that he sought relocation as an option at least in part in reaction

10  to the events surrounding this case, and perhaps as an option in case he proved unsuccessful in

11  this action. After hearing testimony at the Sanctions Evidentiary Hearing from Petitioner, and

12  Lt. Col. Brown, the Court finds this position of Petitioner to be supported and credible."

13  [Order at 45].

14         Despite acknowledging that Petitioner faced a real and difficult dilemma between

15  proceeding with the Petition to potentially remain in Germany with his children vs.

16  abandoning the Petition and moving to California to be with them sooner, the Magistrate

17  concluded that Petitioner and his counsel acted in bad faith by opposing Respondent's motion

18  for a continuance on May 18, 2022.   The Order reasoned that Petitioner's testimony that he

19  still had options to remain in Germany after Petitioner received the Beale transfer order on

20  May 12, 2022, "such as requesting to have his re-assignment order reversed, or even quit the

21  Air Force, while perhaps technically possible, [was not] not plausible, credible, or persuasive."

22  Order at 46. Without citing or summarizing any specific testimony or evidence, the Order

23  further concluded: "[i]n consideration of all the testimony at the Sanctions Evidentiary

24  Hearing, the Court does not consider such alternatives played a significant role in Petitioner's

25  decision to proceed forward into the Convention Evidentiary Hearing." *Id.*  The Magistrate

26  then found that "Petitioner and counsel proceeded in bad faith by refusing to continue the

27  Convention Evidentiary Hearing."  *Id.*

28
_____

[5] Magistrate Judge Boone also ordered and recommended granting and denying other requests for relief that are not relevant to these Objections.

*Pet.'s Req. for Reconsider. MJ Ruling*
                                                         *No. 1:21-cv-01706-JLT-SAB*

1    Further noting that Petitioner and his counsel had notice of the Beale transfer order and

2    Respondent's position that the case was effectively moot by May 18, 2022, Magistrate Judge

3    Boone faulted Petitioner and counsel for not coming to a final decision about whether to

4    proceed on May 18: "[t]he Court finds no good faith reason why the Petitioner and his

5    counsel's calculations or reasoning should have changed between the time of the May 18,

6    2022 hearing, and the filing of the motion to dismiss on May 23, 2022." *Id.* a 47.  The

7    Magistrate also found "that despite Petitioner knowing then [on May 18] that the hearing

8    would never proceed, and that proceeding would require the Respondent to prepare and

9    expend significant resources, as well as the Court to expend time and resources, and denying

10   other litigants the opportunity to have their matters heard, the Petitioner maintained his

11   objection to a continuance." *Id.*

12       The Magistrate concluded those findings amounted to bad faith by Petitioner and his

13   counsel, and ordered sanctions for respondent's legal fees incurred between May 18, 2022 and

14   May 23, 2022, the date Petitioner moved to dismiss the Petition (including fees "incurred in

15   relation to the parties' sanctions motions").[6]  The Order issued the sanctions under 28 U.S.C.

16   § 1927 and, in the alternative, the Court's inherent authority.  *Id.* at 47-48.

17       **III.       LEGAL STANDARDS**

18       The Court's authority to sanction attorneys under § 1927 and its inherent disciplinary

19   power must be exercised with restraint and discretion.  *Lahiri v. Universal Music & Video*

20   *Distribution Corp.*, 606 F.3d 1216, 1223 (9th Cir. 2010). "[S]anctions are not to be lightly

21   granted."  *Philips N. Am. LLC v. Kpi Healthcare, Inc.*, No. CV 19-1765, 2021 WL 3558778, at

22   *3 (C.D. Cal. Apr. 29, 2021) (citation and quotation marks omitted). Further, "[s]anctioning an

23   attorney under these provisions is uncommon." *Mayorga v. Ronaldo*, No. 219-CV-00168J,

24   2023 WL 2020075, at *2 (D. Nev. Feb. 14, 2023).

25

26

27   _____

     [6] Read literally, this sentence authorizes sanctions for Respondent's time spent both on (i) its
     own sanctions motion and (ii) opposing Petitioner's unsuccessful sanctions motion. Any time
28   spent opposing Petitioner's sanction motion should not, however, count toward any sanctions
     amount.  The Magistrate Judge made no findings at all about Petitioner's motion for sanctions
     being improper in any way, let alone frivolous or brought in bad faith.

                                        7        *Pet.'s Req. for Reconsider. MJ Ruling*
                                                 *No. 1:21-cv-01706-JLT-SAB*

1    Section 1927 provides that any attorney "who so multiplies the proceedings in any case

2    unreasonably and vexatiously may be required by the court to satisfy personally the excess

3    costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C.

4    § 1927. "Sanctions are warranted when an attorney has shown subjective bad faith by

5    "knowingly or recklessly rais[ing] a frivolous argument or argu[ing] a meritorious claim for

6    the purpose of harassing an opponent." *Cowden v. Chrysler Corp.*, 116 F.3d 483 (9th Cir.

7    1997) (unpublished).  While not stated expressly, here Magistrate Boone's bad faith finding

8    appears to be based on the latter type of bad faith, i.e., arguing a meritorious claim for the

9    purpose of harassing an opponent.  Order at 45-47 (rejecting Respondent's argument that the

10   Petition was moot, i.e., further proceedings would be frivolous, and instead faulting Petitioner

11   and counsel for causing Respondent to incur further legal fees at a point after a full hearing

12   would not proceed because of the Beale transfer order).  Magistrate Judge Boone made no

13   findings that any of Petitioner's arguments were frivolous.

14   To warrant sanctions under § 1927, conduct must be proactively vexatious and not

15   simply careless, negligent, or unreasonable.  *See Franco v. Dow Chem. Co*., 611 F.3d 1027,

16   1060-61 (9th Cir. 2010) ("To be sanctionable under § 1927, [ ] counsel's conduct must

17   multiply the proceedings in both an 'unreasonable and vexatious manner.' [ ] The key term in

18   the statute is 'vexatiously'; carelessly, negligently, or unreasonably multiplying the

19   proceedings is not enough.") (internal citation omitted).

20   The Magistrate also imposed sanctions under the Court's inherent authority, which

21   similarly required a "specific finding of bad faith." *United States v. Stoneberger*, 805 F.2d

22   1391, 1393 (9th Cir. 1986).  In addition, "because of their very potency, inherent powers must

23   be exercised with restraint and discretion." *Chambers v. NASCO, Inc*., 501 U.S. 32, 44 (1991)

24   (citations omitted).

25   The Ninth Circuit has not previously decided the burden of proof required for an award

26   of compensatory or remedial sanctions, but has held that clear and convincing evidence of bad

27   faith will suffice. *McClintock v. Cooper*, No. 218CV0560JAMKJNP, 2021 WL 4741898, at

28   *2 (E.D. Cal. Oct. 12, 2021), report and recommendation adopted, No.

1    218CV0560JAMKJNP, 2021 WL 5494777 (E.D. Cal. Nov. 23, 2021) (citing *Lahiri*, 606 F.3d

2    at 1219). "[T]he bad faith requirement sets a high threshold." *Mendez v. County of San*

3    *Bernardino*, 540 F.3d 1109, 1132 (9th 2008) (*citing Primus Auto. Fin. Servs., Inc. v. Batarse*,

4    115 F.3d 644, 649 (9th Cir.1997)).

5           Federal Rule of Civil Procedure 72(a) governs District Court review of objections to

6    nondispositive orders of a Magistrate Judge.  The District Court may modify or set aside any

7    part of the order that is "clearly erroneous or contrary to law." *Id.*; *Maisonville v. F2 America,*

8    *Inc.*, 902 F.2d 746, 747-48 (9th Cir. 1990).  "The 'clearly erroneous' standard applies to the

9    magistrate judge's factual determinations and discretionary decisions," and allows the district

10   court to overturn a magistrate judge's ruling if it is "left with the definite and firm conviction

11   that a mistake has been made."  *Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d

12   980, 983 (S.D. Cal. 1999). "On the other hand, the 'contrary to law' standard permits

13   independent review of purely legal determinations by a magistrate judge." *Id*.

14          **IV.        ARGUMENT**

15          Magistrate Judge Boone's finding of bad faith was legal error because (i) the predicate

16   findings regarding Petitioner's conduct were clearly erroneous; and (ii) even if all of the

17   Magistrate Judge's predicate factual findings are accepted, it was contrary to law to conclude

18   that those findings amount to bad faith.

19          **A. Magistrate Judge Boone Clearly Erred in His Predicate Factual Findings.**

20          In support of the bad faith conclusion, Magistrate Judge Boone relied on four predicate

21   factual findings:

22          (i)     Petitioner's testimony that he still "had options" to stay in Germany after

23                  receiving the Beale transfer order May 12, 2022 was "not plausible, credible, or

24                  persuasive," Order at 45-46;

25          (ii)    those options therefore "did not play[] a significant role in Petitioner's decision

26                  to proceed forward into the Convention Evidentiary Hearing," *id.* at 46;

27

28

(iii)   there was "no good faith reason why the Petitioner and his counsel's calculations or reasoning should have changed between the time of the May 18, 2022 hearing, and the filing of the motion to dismiss on May 23, 2022," *id.* at 47; and

(iv)   Petitioner knew on May 18 when he opposed the continuance that "the hearing would never proceed," *id.*

The first, second, and fourth findings are all closely related, and boil down to Magistrate Judge Boone's conclusion that Petitioner could not have honestly believed he could still stay in Germany after receiving the Beale transfer order on May 12.

These predicate factual findings are clearly erroneous because they rely on discounting uncontroverted testimony in the record while drawing contrary, non-intuitive conclusions supported by no testimony or other evidence.   While a fact-finder is of course free to resolve conflicts in testimony and evaluate the credibility of testifying witnesses, here there were no relevant conflicts to resolve nor other evidence upon which to base a contrary conclusion. *See United States v. Coffey*, 233 F.2d 41, 43-44 (9th Cir. 1956) (a court's finding that rested on "unadulterated speculation" was therefore "clearly erroneous.").

*Coffey* is instructive here.  There, the Ninth Circuit reversed the lower court because its factual findings were not supported by "direct evidence."  The issue was whether the district court could conclude that Army members possessed or controlled a bomb that ultimately harmed the plaintiff.  The Ninth Circuit explained why evidence supporting the conclusion was necessary.  It concluded that "while the circumstantial evidence might well establish this point, there was no evidence of any kind from which inferences could be logically drawn as to other essentials of proof. It is pure guess work to say whether the bomb was previously in the hands of the Army, the Navy or some government contractor. It is unadulterated speculation." *Id.*

Here, Petitioner testified in a non-conclusory fashion to the details of why in his particular situation the possibility of having his transfer order canceled was realistic.  Those reasons included that the conflict with his spouse had created a "case [that] had visibility by multiple generals at the highest levels in Europe." Tr. 119:8-17.  As a result, Petitioner's

1    superiors were "very much trying to support [him] based on the negative actions that

2    [Respondent] had taken." Tr. 97:13-22.  In addition, Petitioner explained that his

3    understanding was not some abstract hope in his head, but was based on actual conversations

4    with superior officers about his situation.  Tr. 132:20-133:12; *see also* Tr. 120:7-20

5    (explaining that canceling transfer order would not have negative career impact).

6            Petitioner's testimony was corroborated by the testimony of another military officer,

7    Lt. Col. Brown, who was in communication with Petitioner about coming to work under Lt.

8    Col. Brown at Beale during this period preceding Petitioner's dismissal motion.  Tr. 75:6-11

9    ("Q: And after the assignment to Beale was completed by the issuance of an order to

10   Lieutenant Colonel Krause, does he have the ability to seek the -- that those orders be

11   amended or vacated or modified in some respect with his commanding officer? A: Yes.").

12           No witness testimony or other evidence in the record contradicted Petitioner and Lt.

13   Col. Brown on this point about his option of seeking to cancel the Beale transfer order.

14   Therefore, Magistrate Judge Boone clearly erred in finding that Petitioner did not "ha[ve]

15   options" to stay in Germany, did not consider those options in opposing the continuance on

16   May 18, and knew that a hearing on his Petition would never occur.  *See Coffey*, 233 F.2d at

17   43-44 (clear error to make finding based on "unadulterated speculation").

18           As a result, Magistrate Judge Boone's third predicate conclusion that there was "no

19   good faith reason" why Petitioner and his counsel's calculations and reasoning could change

20   between May 18 and May 23 was also clear error.  To the extent Petitioner "had options" and

21   was understandably struggling with weighing the risks and benefits of the competing strategies

22   of proceeding with the Petition on an uncertain timeline to potentially stay in Germany – his

23   preferred outcome – and dismissing his Petition to move to California and be closer to his

24   children on a faster timeline, those are legitimate, good-faith reasons his conclusions could

25   (and did) change between May 18 and May 23.

26       **B.  Magistrate Judge Boone's Bad Faith Finding Was Contrary to Law.**

27           Even if this Court accepted all of Magistrate Judge Boone's predicate factual findings,

28   the bad faith conclusion was still contrary to law.  Magistrate Judge Boone faulted Petitioner

1    and his counsel for taking five days to weigh risks and benefits of different strategies instead

2    of less than one day.  Even if Magistrate Judge Boone were correct that Petitioner and counsel

3    could and should have reached a final conclusion sooner, that does not begin to satisfy the

4    standard of establishing by clear and convincing evidence that Petitioner and counsel's actual

5    reason for delay was intentional harassment of Respondent.

6           "The application of a legal standard to a particular set of facts is a "mixed question of

7    law and fact." *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536-MWF (ASX),

8    2021 WL 681127, at *1 (C.D. Cal. Feb. 5, 2021).  A bad-faith finding is a mixed question of

9    law and fact.  *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1119 n.12

10   (9th Cir. 2000).  "[M]ixed questions of fact and law are reviewed de novo."  *SPS Techs.*, 2021

11   WL 681127, at *1 (citing *United States v. Yijun Zhou*, 838 F.3d 1007, 1012 (9th Cir. 2016)).

12          As explained above, Magistrate Judge Boone discounted Petitioner's stated

13   explanation for why he opposed the continuance on May 18 and then changed his mind on

14   May 23 (*i.e.*, that Petitioner was weighing difficult options with many uncertainties after being

15   presented with a continuance motion the day before a hearing).  But it is a significant leap to

16   conclude that the *actual* reason for the delay was intentional harassment.  That conclusion is

17   not supported by any evidence in the record, and the Magistrate cited none.

18          Taking a step back, ruling out one reason for the delay in no way suggests that the only

19   other plausible reason for delay was intentional harassment.  There are countless reasons

20   Petitioner and counsel could have delayed dismissal a few days.  Even if the Court concluded

21   that the real reason for delay must have been unflattering if the proffered reason was (in the

22   Magistrate Judge's view) not credible, the delay could still have been the result of, for

23   example: oversight, lack of diligence, or an unusual temperament prone to second-guessing

24   prior decisions.  None of those reasons amount to bad faith.  The only question is whether

25   clear and convincing evidence establishes that the *actual* reason was intentional harassment.

26   The record is devoid of support for that conclusion.[7]

27   _____

28   [7] To be clear, Petitioner and counsel respectfully submit that the record shows that they acted
     diligently, thoughtfully, responsibly, and appropriately throughout the proceedings.  The point
     remains however, that even if the Court concluded otherwise, that is not enough to support a
     finding of bad faith.

1    Indeed, the stated reasoning in Magistrate Judge Boone's Order confirms that the Court

2    stopped short of making the necessary predicate finding of intentional harassment.  Instead,

3    the Magistrate Judge reasoned that there was "no good faith reason why the Petitioner and his

4    counsel's calculations or reasoning should have changed between the time of the May 18,

5    2022 hearing, and the filing of the motion to dismiss on May 23, 2022." Order at 47.  Even if

6    that were accurate (and Petitioner maintains it is not), the resulting conclusion would be that

7    Petitioner and counsel were negligent in failing to reach what the Court thought was an

8    obvious conclusion on May 18 instead of May 23.  The implied finding of negligence is

9    confirmed by Magistrate Judge Boone's cross-examination of Petition on whether he was

10    trained in risk assessment, which previewed the Court's opinion that Petitioner should have

11    made his decision more efficiently.  But being slow in reaching a difficult decision is very

12    different than delaying for the purpose of intentional harassment, and it is not bad faith.  *See*

13    *Navarro v. Gen. Nutrition Corp.*, No. C-03-0603SBAEMC, 2004 WL 2648373, at *21 (N.D.

14    Cal. Nov. 19, 2004), report and recommendation adopted in part, No. C 03-0603 SBA, 2005

15    WL 2333803 (N.D. Cal. Sept. 22, 2005) ("bad faith may be inferred 'only if actions taken are

16    so completely without merit as to require the conclusion that they must have been undertaken

17    for some improper purpose, such as delay.'" (internal citation omitted)).

18    In sum, Respondent sought a trial continuance the night before a scheduled pretrial

19    hearing, giving Petitioner and his counsel remarkably little time to respond.  Unwilling to

20    permanently foreclose Petitioner's preferred outcome in a highly-emotionally-charged case

21    affecting his access to his children and the future of his career and family by dismissing his

22    Petition on such short notice,[8] Petitioner opposed the continuance and continued to prepare for

23    trial.  A few days later, faced with continuing uncertainty in the outcome and timing of his

24    Petition, Petitioner concluded his best option was to forego the Petition and relocate to

25    California to be near his children sooner.  Regardless of whether Petitioner and counsel could

26    have reached the same conclusion on May 18, the only question before the Court is whether

27
28

---

[8] To be clear, Petitioner's testimony was that he only believed he had options to stay in
Germany until the date he had to actually report to Beale, which was July 1.  *E.g.*, Tr. 139:8-14.
If Petitioner did not oppose the continuance, it was extremely unlikely that he could obtain a
merits ruling on the Hague proceedings before that July 1 date.

1   they actually decided in bad faith on May 18 to oppose the continuance for the purpose of

2   intentional harassment.  No evidence supports that conclusion of bad faith.[9]

3                    **C.  Sanctions Against Counsel Are Particularly Inappropriate.**

4            As explained above, the Court's findings and conclusions regarding *Petitioner*'s bad

5   faith are clearly erroneous and contrary to law.  That error was compounded when Magistrate

6   Judge Boone extended those sanctions to Petitioner's *counsel*.  The Order made only two

7   factual findings specific to counsel.  First, the Court explained that "[t]he Court accepts that

8   'Petitioner's counsel did not receive Petitioner's reassignment orders until May 18, 2022 and

9   were not aware that it was a consideration until on or around May 13, 2022.'"  Order at 46.

10  Second, as discussed above, the Court found that was "no good faith reason why the Petitioner

11  and his counsel's calculations or reasoning should have changed" between May 18 and May

12  23.  *Id.* at 47.

13           Those findings do not support a conclusion of bad faith levied against counsel, because

14  the logic of Magistrate Judge Boone's bad-faith finding was specific to Petitioner.

15  Specifically, the Magistrate reasoned that *Petitioner* did not actually believe he could still stay

16  in Germany after receiving the transfer order, and *Petitioner* knew "that the hearing would

17  never proceed" when he opposed the continuance on May 18.  Order at 45-47.  Even if that

18  were accurate (and Petitioner has explained it is not), it does not follow that Petitioner's

19  counsel believed and knew the same.

20           Petitioner's counsel had an ethical duty to implement the strategy Petitioner wanted

21  absent knowledge that the strategy was unethical or illegal.  *E.g.*, N.Y. Rule of Prof'l Conduct

22  1.2; [Min Decl. ¶ 4].  Counsel has stated that counsel had had no intention to harass

23  Respondent, nor did counsel carry out any strategy that counsel understood to be for the

24

25  [9] Indeed, billing and email records confirm that Petitioner's counsel continued to prepare for
    trial for several days after the continuance hearing, which would not make sense if Petitioner
26  and counsel did not actually intend to proceed with the hearing. [Min Decl., Ex. A-C ].  Further,
    Petitioner respectfully suggests that the timeline at issue is inconsistent with a desire to harass
27  Respondent.  If Petitioner truly had such a plan, extending the proceedings for only two
    business days and one weekend would be an oddly short period to vexatiously multiply
28  proceedings.

purpose of harassing Respondent.  [Min Decl. ¶ 4].  Further, counsel had a good-faith belief that this matter was not moot (which Magistrate Judge Boone ultimately agreed with), and that relief was available to Petitioner via the Petition, including at the time he sought dismissal of the Petition on May 23, 2022.  *Id.*

No evidence or testimony in the record contradicts counsel's statements, nor independently supports the conclusion that counsel believed Petitioner had no realistic option to stay in Germany after May 18 or intended to harass Respondent.  Moreover, the billing records and communications with witnesses confirm that counsel continued to work on this matter in good faith after May 18, which is inconsistent with any finding that counsel never intended to proceed with the Hague hearing and therefore opposed the continuance only to harass Respondent.  [Min Decl. Exs. A, B, D].

This case underscores the good reasons that sanctions against attorneys for bad faith "are not to be lightly granted," *Philips N. Am. LLC*, 2021 WL 3558778, at *3, such sanctions are "uncommon,"  *Mayorga*, 2023 WL 2020075, at *2, and the bad faith requirement "sets a high threshold." *Mendez*, 540 F.3d at 1132.  The underlying proceedings here required Petitioner to make intensely personal, emotionally-charged, life-altering decisions in a contentious setting.  [Min Decl. ¶ 9].  Regardless of a client's professional success or sophistication, these decisions are inherently difficult and uniquely challenging.  *Id.* Magistrate Judge Boone has sanctioned counsel for, in essence, permitting Petitioner to take five days to reach a decision the Magistrate Judge believed should have been reached in less than one day based on the information available.  Upholding such a sanctions order could uniquely chill the attorney-client relationship in cases in this context, where clients understandably struggle with competing options and are unable to robotically analyze strategies that profoundly affect their children and career.  Moreover, such a sanctions order would uniquely burden the practice of Hague Convention counsel, who commonly practice nationwide and seek *pro hac vice* admission that requires disclosing prior sanctions.  [Min Decl. ¶ 10].  In sum, the sanctions order against counsel here was clearly erroneous, contrary to law, and unfair given the context.

*Pet.'s Req. for Reconsider. MJ Ruling No. 1:21-cv-01706-JLT-SAB*

**D.   The Magistrate Judge's Sanctions Order is Procedurally Flawed.**

Magistrate Judge Boone's sanctions Order states counsel have been sanctioned, but does not specify which counsel have been sanctioned.  Sanctions under Section 1927 must be directed toward specific attorneys, not a law firm or law firms.  *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015).  Failure to specify which attorneys have been sanctioned was therefore error, and creates professional responsibility dilemmas for the attorneys representing Petitioner who are obligated to report certain sanctions but are unclear whether they have been sanctioned.  *See, e.g.*, Cal. Bus. & Prof. Code § 6068(o)(3) (placing affirmative duty on attorneys licensed by the State Bar of California to report the imposition of judicial sanctions against the attorney if said sanctions are one thousand dollars or more).

While Petitioner maintains that no sanctions against Petitioner or counsel are warranted for the reasons stated above, if sanctions are upheld against counsel, Petitioner respectfully suggests that such sanctions should only extend, at most, to one or more of the attorneys who have formally appeared on behalf of Petitioner in this Court, and not any other attorneys whose names have appeared in captions on briefs.  [*See* Min Decl.  ¶ 2].

**V.  CONCLUSION**

Petitioner Michael Krause respectfully requests that the Court grant his request for reconsideration by the District Court of the portion of Magistrate Judge Stanley Boone's order and recommendations dated March 16, 2023 granting Respondent's motion for sanctions, and asks this Court to enter an order vacating those sanctions for the reasons stated above.  In addition, to the extent the Court's resources permit, Petitioner respectfully requests an oral argument hearing before the District Court before the instant objection is decided.

//

//

//

//

//

//

DATED: March 30, 2023           Respectfully submitted,

                                DELAHUNTY & EDELMAN LLP


                                By:  _____/s/ William J. Edelman_____
                                     PATRICK R. DELAHUNTY, SBN 257439
                                     pdelahunty@delawllp.com
                                     WILLIAM J. EDELMAN, SBN 285177
                                     wedelman@delawllp.com

                                     Attorneys for Petitioner Michael Krause